UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-10701-RWZ

_____

| | |
|---|---|
| JOAN WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTHCARE SOUTH, P.C., PHYSICIAN | ) |
| STRATEGIES, LLC, and JOHN J. | ) |
| BRADBURY, JR., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF'S MOTION TO REMAND AND FOR SANCTIONS

**I.**
**LEGAL POSTURE**

The defendants, Healthcare South, P.C., Physician Strategies, LLC, and John J.

Bradbury, Jr. ("Defendants"), removed the above-captioned matter from the Plymouth

County, Massachusetts Superior Court to the United States District Court of

Massachusetts.  In accordance with 28 U.S.C. § 1446(b), the plaintiff, Joan Walsh ("Ms.

Walsh" or "Plaintiff"), respectfully requests this court to remand the above-captioned

matter back to the Plymouth County, Massachusetts Superior Court.

**II.**
**STATEMENT OF FACTS**

**Background**

On September 7, 1999 the defendant, Healthcare South, hired the plaintiff, Joan

Walsh, as Coordinator of Human Resources.  As Coordinator, Ms. Walsh was responsible

for administering and managing the Human Resources department for the Defendants.  In

carrying out her duties, Ms. Walsh discovered improprieties pertaining to the company's retirement plan.  Ms. Walsh immediately reported these violations to her supervisors and the Defendants.  As a result of Ms. Walsh's efforts to internally address these issues with her supervisors, the Defendants retaliated against her.  On November 2, 2001, the Defendants, through Mr. Bradbury, wrongfully terminated Ms. Walsh.

Susan Aniolowski, also a former employee of the Defendants, experienced a similar fate.  For twenty-four years, Ms. Aniolowski served as the Defendants' Medical Billing Manager.  In the course of her duties, Ms. Aniolowski identified and internally reported numerous fraudulent and questionable billing practices.  Similar to Ms. Walsh, the Defendants retaliated against her.  Soon after Ms. Aniolowski internally reported these billing practices, the Defendants created a hostile and intolerable work environment, which ultimately resulted in Ms. Aniolowski's constructive discharge.

**Procedural History**

On March 24, 2003, Ms. Walsh filed a twelve count complaint in Plymouth County, Massachusetts Superior Court.[1]  Exhibit A.  All counts raised violations of state law only.  Relevant to this controversy, Ms. Walsh made four claims of retaliation against the Defendants.  In counts three and four, Ms. Walsh presented claims for retaliation pursuant to M.G.L. ch. 151B.  In counts nine and twelve, Ms. Walsh presented wrongful discharge claims in violation of public policy.[2]

On May 21, 2003, the Defendants filed an Answer and Defenses to Plaintiff's complaint.  Exhibit B.  It was there that the Defendants first professed actual knowledge

---

[1] Similarly, on March 20, 2003, Ms. Aniolowski filed a twenty-two count complaint against the Defendants.
[2] Similarly, in Counts V, X, XV, and XXI of her complaint, Ms. Aniolowski presented wrongful discharge claims in violation of public policy.

of grounds for federal subject matter jurisdiction.  In their Tenth Defense, the Defendants asserted that Ms. "Walsh's retaliation claims are preempted by ERISA."  Id. at 7.

On June 27, 2003, the Defendants filed a Motion to Dismiss in which they acknowledged, for the second time in a signed pleading, grounds for federal subject matter jurisdiction.  Exhibit C.  According to the Defendants, Ms. Walsh's "common-law claims for retaliation…must be dismissed because, to the extent Plaintiff alleges she was retaliated against for reporting violations of the Company's retirement plan, her claims are barred by ERISA."  Id. at 2.  On August 22, 2003, the Defendants filed a Reply Memorandum in Support of their Motion to Dismiss, reiterating their ERISA preemption argument: "To the extent that Plaintiff's wrongful termination claims are based on the public policy in favor of reporting benefit plan violations, Plaintiff's claims are barred by ERISA."  Exhibit D at 10.

On April 26, 2004, Judge Gary Nickerson of the Superior Court dismissed counts nine and twelve of Ms. Walsh's complaint.  With regard to Ms. Walsh's claims for wrongful discharge in violation of public policy, Judge Nickerson stated: "Insofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by the Employee Retirement Income Security Act."  Exhibit E at 2.[3]

On December 5, 2004, the Defendants filed a Motion for Protective Order to Quash the Plaintiff's Deposition Subpoenas and Limit Discovery.[4]  Exhibit F (exhibits omitted).  In paragraphs 4 and 5, the Defendants, for the fourth time in a signed pleading,

---

[3] Judge Nickerson refused, however, to dismiss Ms. Walsh's claims for retaliation filed pursuant to M.G.L. ch. 151B (counts three and four), thus recognizing limits to ERISA preemption.
[4] Specifically, the Defendants unsuccessfully sought to quash the deposition subpoenas of Sergio DeCurtis, Jed Cohen, New England Financial, and Jed Cohen & Co. – which comprise the individuals and the companies that performed retirement plan administration and audits of the defendant Healthcare South.

asserted grounds for federal subject matter jurisdiction.  There, the Defendants argued

that Ms. Walsh's common law claims for wrongful discharge "failed as a matter of law

because they were barred by ERISA."  Id. at 2.

On February 11, 2005, the Superior Court denied the Defendants' motion in a

written Order.  Exhibit G.

On February 17, 2005, the Defendants filed a Motion for Reconsideration of the

Court's February 11, 2005 Order Denying Defendant's Motion for Protective Order.

Exhibit H (exhibits omitted).  For the fifth time in a signed pleading, the Defendants

asserted federal subject matter jurisdiction, stating that Ms. Walsh's retaliation claims

"obviously constitute an 'alleg[ation] that [the Plaintiff] was wrongfully terminated

because she reported possible benefit plan violations,' and, therefore, they are 'preempted

by [ERISA].'"  Id. at 3.

On March 10, 2005, the Superior Court again denied the Defendants' Motion for

Protective Order.  Exhibit I.  For the second consecutive time, the Superior Court refused

to quash the Plaintiff's deposition subpoenas and allowed discovery to move forward.

From the time of their Answer filed on May 21, 2003 until their last Motion for

Protective Order on March 10, 2005, the Defendants professed actual knowledge of

grounds for federal subject matter jurisdiction on no less than five occasions in discrete,

signed pleadings.  On April 8, 2005, after nearly two years of repeating their ERISA

preemption arguments, the Defendants filed a Notice of Removal with this court.  Exhibit

J (exhibits omitted).  On April 12, 2005, the Plaintiff's counsel, Attorney David

Angueira, informed the Defendants in a faxed letter that their untimely Notice of

Removal constituted forum shopping, and gave the Defendants until April 19, 2005 to

withdraw their pleading.  Exhibit K.  The Defendants failed to respond in any manner

whatsoever to the Plaintiff's attempt to resolve this matter informally.

### III.
### ARGUMENT

**The District Court should Remand this case to Superior Court because the Defendant's Removal was not filed within 30 Days after Removal could be "First" or "Intelligently" Ascertained**

Pursuant to 28 U.S.C. §1446(b), a "notice of removal may be filed within thirty

days after receipt by the defendant…of a copy of an amended pleading, motion, or order

or other paper from which it may be first ascertained that the case is one which is or has

become removable."  (emphasis added).

From the time that the Defendants filed their Answer and Defenses nearly two

years ago on May 21, 2003, they have continuously professed actual knowledge

throughout this entire litigation that grounds for removal exist.  Thus, the Defendants'

contention that they "first ascertained" that grounds for removal existed in only the 30

days prior to filing their Notice of Removal on April 26, 2004 is completely baseless,

without merit, and frivolous.  See 28 U.S.C. §1446(b).  Furthermore, any contention on

the part of the Defendants that grounds for removal could only be "intelligently

ascertained" in the 30 days prior to filing their Notice of Removal is also completely

baseless, without merit, and frivolous.  See Whitaker v. Am. Telecasting, Inc., 261 F.3d

196 (2d Cir. 2001).

Under the guidelines set forth in §1446(b), the Defendants were required to

remove the Plaintiff's complaint within 30 days after learning that Ms. Walsh's case was

removable.  On March 24, 2003, Ms. Walsh filed her twelve count complaint against the

Defendants.  In counts nine and twelve, Ms. Walsh sought compensation for wrongful

discharge in violation of public policy. The Defendants' Answer and Defenses filed with the Superior Court on May 21, 2003 – in which they alleged that Ms. "Walsh's retaliation claims are preempted by ERISA" – make clear that they "first ascertained" that the Plaintiff's case "is one which is or has become removable" from the very beginning of this litigation.

The Defendants' Answer was only the beginning. Throughout these past two years, the Defendants have repeatedly acknowledged grounds for federal subject matter jurisdiction. On June 27, 2003, the Defendants filed a Motion to Dismiss in which they unremittingly argued that Ms. Walsh's "common-law claims for retaliation…must be dismissed because…her claims are barred by ERISA." On August 22, 2003, the Defendants filed a Reply Memorandum in Support of their Motion to Dismiss. There, the Defendants persisted in their pleas for ERISA preemption: "To the extent that Plaintiff's wrongful termination claims are based on the public policy in favor of reporting benefit plan violations, Plaintiff's claims are barred by ERISA."

On April 26, 2004, Judge Nickerson of the Superior Court made the option of removal to federal court painstakingly obvious to the Defendants, dismissing counts nine and twelve in a written Order in which he stated: "Insofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by the Employee Retirement Income Security Act." Based on Judge Nickerson's Order alone, any contention on the Defendants' part that grounds for federal subject matter jurisdiction could only be "intelligently ascertained" within the 30 days before filing their Notice of Removal is repugnant.

Unsurprisingly, after Judge Nickerson's Order, the Defendants' ERISA preemption chants continued. On December 5, 2004 and February 17, 2005, the Defendants filed Motions for Protective Orders in which they repeated their ERISA preemption arguments and attempted, unsuccessfully, to halt discovery. At any of these points, the Defendants could have removed Ms. Walsh's case to federal court, but instead made a conscious and strategic decision to keep this action in state court.

It is seemingly beyond comprehension why the Defendants, after nearly two years of professing actual knowledge of federal subject matter jurisdiction, would attempt to now remove this action to federal court under the pretext that they first ascertained removability only after asserting ERISA preemption for the fifth time. One explanation, however, helps to explain the Defendants' audacity.

Ironically, the Defendants filed for removal 29 days after the Superior Court of Massachusetts denied their Motion for Protective Order for a second time.[5] The Defendants' Notice of Removal represents nothing more than an outrageous attempt to circumvent the Superior Court's Protective Order rulings and delay discovery further.

Additionally, that the Defendants' have not removed Ms. Aniolowski's complaint is equally suggestive of their ill-intentions for removing Ms. Walsh's case. Similar to Ms. Walsh's lawsuit, Ms. Aniolowski also presented claims for wrongful discharge in violation of public policy. Instead of removing both cases, however, the Defendants chose to selectively uproot Ms. Walsh's lawsuit on the heels of an adverse discovery ruling, which the Defendants unabashedly know is certain to reveal incriminating information. By wrongfully removing Ms. Walsh's case, the Defendants are trying to

---

[5] On February 17, 2005, the Defendants filed a Motion for Reconsideration of the Court's February 11, 2005 Order Denying Defendants' Motion for Protective Order. On March 10, 2005, the Superior Court denied the Defendants' Motion for Protective Order.

7

create a wedge between the Walsh and Aniolowski lawsuits with the hope that they may attempt to repeat their obstructive discovery abuses and roll the proverbial dice with another court.  The Defendants' strategy to find a court that will decide in favor of ERISA preemption on all counts, thereby halting discovery contrary to the Orders of the Superior Court, amounts to blatant forum shopping.

The pretenses surrounding the Defendants' abusive forum shopping are disdainful and patently frivolous.  Moreover, that the Defendants ignored the Plaintiff's attempt to resolve this matter informally and without having to incur additional expense is also distressing.[6]  In wrongfully removing Ms. Walsh's action to federal court, the Defendants have displayed utterly distasteful and egregious behavior – behavior that this court should not endorse.  Accordingly, this court should resist the Defendants' attempt to forum shop and uphold the requirements set forth in §1446(b).

## IV.
## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests that the United States District Court of Massachusetts remand this case to the Plymouth Superior Court.  Moreover, as sanctions for the Defendants' wrongful conduct, the Defendants should be ordered to pay all of the Plaintiff's counsel fees and costs associated with this motion for remand and sanctions.

Dated: May 5, 2005                                    The Plaintiff
                                                      By Her Attorneys

---

[6] On April 12, 2005, Attorney Angueira faxed a letter to the Defendants asking them to withdraw their Notice of Removal.  The Defendants failed to respond and have remained obstinate in their blatant disregard of the removal requirements set forth under §1446(b).

/s/David P. Angueira
_____
Edward M. Swartz, BBO# 489540
David P. Angueira, BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, Massachusetts  02108
(617) 742-1900

## CERTIFICATE OF SERVICE

I, David P. Angueira, do hereby certify that I have served a copy of the within Plaintiff's Motion to Remand and For Sanctions upon the Defendants by mailing the same, first class mail, postage prepaid, or other indicated mode of transmittal, to all counsel, to wit:

Christine J. Wichers, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA  02110

DATED: May 5, 2005

/s/ David P. Angueira
_____
David P. Angueira, BBO# 019610

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss

SUPERIOR COURT
C.A. No.: 03- *03548*

|  |  |
|---|---|
| JOAN WALSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTHCARE SOUTH, P.C., PHYSICIAN | ) |
| STRATEGIES, LLC and JOHN J. | ) |
| BRADBURY, Jr., | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

## INTRODUCTION

1.      This is an action for damages arising out of the Defendants' conduct in discriminating against the Plaintiff based on her gender and age, and retaliating against her when she brought issues of regulatory compliance to the Defendants' attention.

## THE PARTIES

2.      Plaintiff Joan Walsh is an adult individual residing at 4 Sherrill Road, Marshfield, Plymouth County, Massachusetts and was, at all times relative to this Complaint, an employee of the Defendants with the title of Human Resources Director.

3.      Defendant Healthcare South, P.C. (hereinafter, HcS) is a professional corporation consisting of pediatric and family practice physicians with a principle place of business at 18 Columbia Road, Pembroke, Plymouth County, Massachusetts.

4. .      Defendant Physician Strategies, LLC (hereinafter, PS) is a physician services corporation with a principle place of business at 18 Columbia Road, Pembroke, Plymouth County, Massachusetts.

5.      Defendant John J. Bradbury, Jr. is an adult individual with an office at 18 Columbia Road, Pembroke, Plymouth County, Massachusetts and was, at all times relative to this Complaint, the Chief Executive Officer of Defendant HcS and the supervisor of Plaintiff Joan Walsh.

## THE FACTS

6.  Plaintiff Joan Walsh was hired by the Defendants as its first human resources professional on September 25, 1999. At that time, Defendant HcS had approximately two hundred (200) employees.

7.  In July, 2000, Defendant Bradbury told the Plaintiff she was responsible for the administration of the corporate Defendant's retirement plan, but the authority to administer the plan was retained by the Defendant's Controller.

8.  In the course of her duties, the Plaintiff identified and reported numerous failures by the Defendants to comply with regulations concerning its retirement plan, specifically those of the Department of Labor and the Internal Revenue Service.

9.  On August 24, 2001 the Plaintiff distributed a memorandum to the trustees of the HcS retirement plan, Defendant Bradbury and Controller Ann Marie Richards outlining federal requirements for the plan and stating the need for a signed plan document.

10. On August 30, 2001, Defendant Bradbury ordered the Plaintiff to refrain from distributing anything further to the trustees and stated that all communications must go through him. When the Plaintiff reiterated her concerns about the administration of the retirement plan, Defendant Bradbury stated, when the new company was formed (Physician Strategies, LLC) human resources services would not be offered, thereby threatening the Plaintiff's job security and intimidating the Plaintiff.

11. On September 5, 2001, Plaintiff, in the course of her duties, conducted a meeting with the office managers of the physicians who comprise the Defendant Corporation regarding matters related to the retirement plan. While the meeting was in progress, Defendant Bradbury entered the Plaintiff's office, demanded the meeting be ended and angrily ordered the Plaintiff to his office. Fearing for her safety, Plaintiff asked a peer to accompany her to the Defendant's office, where the Defendant told her she was not to address the office managers unless he was present. The Plaintiff asked the Defendant to reassign her retirement plan duties as she could not condone the violations she knew were occurring, and which may cause the plan to be disqualified in violation of existing laws.

12. Thereafter, Defendant Bradbury began a campaign of sexual discrimination, abuse, intimidation and retaliation of the Plaintiff and of disseminating false and defamatory information about the Plaintiff, creating a hostile and intolerable work environment

13. On October 10, 2001 Plaintiff met with Gerald B. Katz, M.D., the Defendants' Treasurer and Board Member regarding his potential fiduciary liability for the company's compliance issues. Plaintiff described the hostile and abusive working

2

environment created by Defendant Bradbury. Dr. Katz recommended the Plaintiff discuss that issue with David Morin, M.D., the Defendant's Medical Director.

14.    On October 11, 2001 the Plaintiff met with Defendant Bradbury, who told her she had no authority to enforce human resources policy and that she was not to use her "Director's" title within the organization. The Defendant referred to the office managers as "a bunch of women" and said he would not tolerate the Plaintiff and Billing Manager, also a woman, having a director's title.

15.    On October 31, 2001, Plaintiff met with Dr. Morin pursuant to the Defendants' Employee Handbook Open Door policy and problem resolution policies. Plaintiff reminded Dr. Morin of the Defendant's harassment policy and advised him of the abusive, hostile and retaliatiry behavior of Defendant Bradbury and his harassment of her. Dr. Morin informed the Plaintiff that Defendant Bradbury had told him he believed the Plaintiff intended to turn the company in to the EEOC. Dr. Morin agreed with the Plaintiff that Defendant Bradbury did not show respect for professional women. Dr. Morin told the Plaintiff she was the human resources for the Defendants and all would be fine.

16.    The Plaintiff was wrongfully terminated by the Defendants on November 28, 2001 in retaliation for her efforts to expose improper and illegal business practices.

### COUNT I
### Sexual Discrimination Against Defendants
### Healthcare South, P.C. and/or Physician Strategies, LLC

17.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 16 above as of fully and completely set forth herein.

18.    Defendants Healthcare South, P.C. and/or Physician Strategies, LLC negligently, deliberately and purposefully and discriminated against the Plaintiff as follows:

    a.    Verbal abuse of the Plaintiff by their agent, John J Bradbury, Jr. based on the Plaintiff's gender;

    b.    Physical and verbal intimidation of the Plaintiff by John Bradbury, Jr.;

    c.    Public humiliation of the Plaintiff by John Bradbury, Jr.;

    d.    Wrongful termination of the Plaintiff's employment.

19.    As a direct and proximate result of the wrongful conduct described herein, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, concern about her employment and future

3



employability, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendants Healthcare South, P.C. and/or Physician Strategies, LLC, in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT II
### Sexual Discrimination Against Defendant John J. Bradbury, Jr.

20.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 19 above as if fully and completely set forth herein.

21.    Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully and discriminated against the Plaintiff as follows:

    a.    Verbal abuse of the Plaintiff based on the Plaintiff's gender;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Wrongful termination of the Plaintiff's employment.

22.    As a direct and proximate result of the wrongful conduct described herein, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, concern about her employment and future employability, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT III
### Retaliation Against Defendant Healthcare South, P.C.
### And/or Physician Strategies, LLC

23.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 22 above as if fully and completely set forth herein.

24.    Following the Plaintiff's disclosure to the Defendant of its violations of federal ERISA regulations and other employment violations, Defendant Healthcare

4

South, P. C. and/or Physician Strategies, LLC negligently, deliberately and purposefully retaliated against Plaintiff Joan Walsh as follows:

a.    Verbal abuse of the Plaintiff by their agent, John J. Bradbury, Jr.;

b.    Physical and verbal intimidation of the Plaintiff by John J Bradbury, Jr.;

c.    Public humiliation of the Plaintiff by John J. Bradbury, Jr.;

d.    Termination of the Plaintiff's employment.

25.    As a direct and proximate result of the retaliation against the Plaintiff and the termination of her employment as hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant Healthcare South, P.C., and/or Physician Strategies, LLC in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT IV
### Retaliation Against Defendant John J. Bradbury, Jr.

26.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 25 above as if fully and completely set forth herein.

27.    Following the Plaintiff's disclosure to the Defendants of its violations of federal ERISA regulations and other employment violations, Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully retaliated against Plaintiff Joan Walsh as follows:

a.    Verbal abuse of the Plaintiff;

b.    Physical and verbal intimidation of the Plaintiff;

c.    Public humiliation of the Plaintiff;

d.    Termination of the Plaintiff's employment.

28.    As a direct and proximate result of the retaliation against the Plaintiff and the termination of her employment as hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of

earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant Jack Bradbury in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT V
### Intentional Interference With An Advantageous Business Relationship by Defendant John J. Bradbury, Jr.

29.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 28 above as if fully and completely set forth herein.

30.    Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully interfered with the advantageous business relationship between the Plaintiff and her employer, Defendants Healthcare South, P.C. and/or Physician Strategies, LLC as follows:

    a.    Verbal abuse of the Plaintiff;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Disseminating false and misleading information about the Plaintiff to her employer;

    e.    Termination of the Plaintiff's employment.

31.    As a direct and proximate result of the allegations hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with attorney fees, interest and costs.

## COUNT VI
### Intentional Interference With A Contractual Relationship by Defendant John J. Bradbury, Jr.

32.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 31 above as if fully and completely set forth herein.

33.     Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully interfered with a contractual relationship between the Plaintiff and her employer, Defendants Healthcare South, P.C. and/or Physician Strategies, LLC as follows:

a.      Verbal abuse of the Plaintiff;

b.      Physical and verbal intimidation of the Plaintiff;

c.      Public humiliation of the Plaintiff;

d.      Disseminating false and misleading information about the Plaintiff to her employer;

e.      Termination of the Plaintiff's employment.

34.     As a direct and proximate result of the allegations hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with attorney fees, interest and costs.

### COUNT VII
### Negligent Infliction of Emotional Distress Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

35.     Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 34 above as if fully and completely set forth herein.

36.     As a result of the actions of the Defendants as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendants in an amount just and proper together with attorney fees, interest and costs.

### COUNT VIII
### Intentional Infliction of Emotional Distress Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

37.     Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 36 above as if fully and completely set forth herein.

38.    As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## COUNT IX
### Wrongful Discharge In Violation of Public Policy Against Defendant Healthcare South, PC and/or Physician Strategies, LLC

39.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 38 above as if fully and completely set forth herein.

40.    Defendants Healthcare South, P.C. and/or Physician Strategies, LLC wrongfully discharged the Plaintiff in violation of public policy as follows:

   a.    Verbal abuse of the Plaintiff;

   b.    Physical and verbal intimidation of the Plaintiff;

   c.    Public humiliation of the Plaintiff;

   d.    Disseminating false and misleading information about the Plaintiff to her employer;

   e.    Termination of the Plaintiff's employment.

41.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff Joan Walsh has been caused to suffer humiliation, embarrassment, loss of her employment, loss of earnings, loss of earning capacity and damage to her reputation and standing in the community.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendants in an amount just and proper together with attorney fees, interest and costs.

## COUNT X
### Negligent Infliction of Emotional Distress Against Defendant John J. Bradbury, Jr

42.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 41 above as if fully and completely set forth herein.

43.    As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan
Walsh has suffered grievous injury, including, but not limited to emotional
distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in
an amount just and proper together with attorney fees, interest and costs.

**COUNT XI**
**Intentional Infliction of Emotional Distress**
**Against Defendant John J. Bradbury, Jr**

44.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1
through 43 above as if fully and completely set forth herein.

45.    As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan
Walsh has suffered grievous injury, including, but not limited to emotional
distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in
an amount just and proper together with attorney fees, interest and costs.

**COUNT XII**
**Wrongful Discharge In Violation of Public Policy**
**Against Defendant John J. Bradbury, Jr**

46.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1
through 45 above as if fully and completely set forth herein.

47.    Defendants John J. Bradbury, Jr. wrongfully discharged the Plaintiff in violation
of public policy as follows:

a.    Verbal abuse of the Plaintiff;

b.    Physical and verbal intimidation of the Plaintiff;

c.    Public humiliation of the Plaintiff;

d.    Disseminating false and misleading information about the Plaintiff
to her employer;

e.    Termination of the Plaintiff's employment.

48.    As a direct and proximate result of the wrongful acts of the Defendant John J.
Bradbury, Jr., Plaintiff Joan Walsh has been caused to suffer humiliation,
embarrassment, loss of her employment, loss of earnings, loss of earning capacity
and damage to her reputation and standing in the community.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## PLAINTIFF DEMANDS TRIAL BY JURY

Dated: March 2 4, 2003

The Plaintiff
By Her Attorneys

Edward M. Swartz, BBO# 489540
David P. Angueira, BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, Massachusetts  02108
(617) 742-1900

10

# Commonwealth of Massachusetts
## County of Plymouth
## The Superior Court

CIVIL DOCKET# **PLCV2003-00354**

RE:  **Walsh v Healthcare South P.C. et al**

TO:Edward M Swartz, Esquire
   Swartz & Swartz
   10 Marshall Street
   Boston, MA 02108

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 06/24/2003 |
| Response to the complaint filed (also see MRCP 12) | 08/23/2003 |
| All motions under MRCP 12, 19, and 20 filed | 08/23/2003 |
| All motions under MRCP 15 filed | 08/23/2003 |
| All discovery requests and depositions completed | 01/20/2004 |
| All motions under MRCP 56 filed and heard | 02/19/2004 |
| Final pre-trial conference held and firm trial date set | 03/20/2004 |
| Case disposed | 05/19/2004 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **B** sitting in
**CtRm 1 (Court Street, Plymouth) at Plymouth Superior Court.**

Dated: 03/26/2003

Francis R. Powers,
Clerk of Courts

BY:

Adam Baler,
Assistant Clerk

Location: CtRm 1 (Court Street, Plymouth)
Telephone: (508) 747-6911

Check website as to status of case: **http://ma-trialcourts.org/tcic**

cvdtracf_2.wpd 336923 lgldoc01 meehanke

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts Superior Court Department County: Plymouth |
|---|---|---|

| PLAINTIFF(S)  Joan Walsh | DEFENDANT(S)  Healthcare South, P.C., Physician Strategies, LLC and John J. Bradbury, Jr. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE  Swartz&Swartz, Edw. M. Swartz, BBO#489540; David P. Angueira, BBO#019610; 10 Marshall St.Boston, Board of Bar Overseers number: MA: (617) 742-1900 | ATTORNEY (if known) |

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO.  B22 | TYPE OF ACTION (specify)  Sexual Discrimination | TRACK  ( F ) | IS THIS A JURY CASE?  (XX ) Yes    ( ) No |
|---|---|---|---|

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses .................................................................$..........
2.  Total Doctor expenses ...................................................................$.75.00......
3.  Total chiropractic expenses ............................................................$..........
4.  Total physical therapy expenses .....................................................$..........
5.  Total other expenses (describe) ........Medication....................................$132.00......
                                                            Subtotal $207.00......
B.  Documented lost wages and compensation to date ....................................$$50,000+....
C.  Documented property damages to date .................................................$..........
D.  Reasonably anticipated future medical and hospital expenses .......................$..........
E.  Reasonably anticipated lost wages ....................................................$..........
F.  Other documented items of damages (describe)
                                                            $..........
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

Plaintiff suffered sexual discrimination, retaliation and interference with a contractual/business relationship; Emotional distress.
                                                            $..........
                                                            TOTAL $ 50,207.00+

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):



                                                            TOTAL $ ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 3/25/0?

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

RECEIVED

MAY 2 4 2004

PLYMOUTH SUPERIOR COURT

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                              SUPERIOR COURT

```
                                  )
JOAN WALSH,                       )
                                  )
           Plaintiff,             )
                                  )      Civil Action No. 03-0354B
v.                                )
                                  )
HEALTHCARE SOUTH, P.C., PHYSICIAN )
STRATEGIES, LLC and JOHN J. BRADBURY, JR., )
                                  )
           Defendants.            )
                                  )
                                  )
```



FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAY 2 4 2004

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT

Defendants Healthcare South, P.C. ("Healthcare South"), Physician Strategies, LLC

("Physician Strategies"), and John J. Bradbury, Jr. ("Bradbury") (collectively, the "Defendants")

hereby respond to the Complaint of Plaintiff Joan Walsh ("Walsh") as follows:

### INTRODUCTION

1.      To the extent Paragraph 1 states conclusions of law, no response is required.  To

the extent it contains allegations of fact, the Defendants deny those allegations.

### THE PARTIES

2.      The Defendants lack knowledge and information sufficient to form a belief about

Walsh's current residence.  The Defendants deny that Walsh was ever an employee of Physician

Strategies or Bradbury.  The Defendants admit that Walsh held the position of Human Resources

Director with Healthcare South.

3.      The Defendants admit the allegations contained in Paragraph 3 of the Complaint.



4.     The Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5.     The Defendants deny that Bradbury was "at all times relative to this Complaint . . . the supervisor of Plaintiff Joan Walsh," but admit the remaining allegations contained in Paragraph 5 of the Complaint.

### THE FACTS

6.     The Defendants deny that Walsh was hired by either Physician Strategies or Bradbury, but admit the remaining allegations contained in Paragraph 6 of the Complaint.

7.     The Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.     The Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9.     The Defendants admit that Walsh distributed a memorandum on August 24, 2001 to the trustees of Healthcare South's 401k plan, Bradbury, and Ann Marie Richards, but deny the remaining allegations contained in Paragraph 9.

10.     The Defendants admit that Bradbury informed Walsh that she should not directly contact the 401k plan's trustees and that Bradbury should approve all such communications. The Defendants deny the remainder of the allegations contained in Paragraph 10 of the Complaint.

11.     The Defendants admit that Walsh met with the Healthcare South office managers on September 5, 2001, and that Bradbury told Walsh on that day not to address the office managers alone. The Defendants deny the remaining allegations contained in Paragraph 11 of the Complaint.

12.     The Defendants deny the allegations in Paragraph 12 of the Complaint.

13.     The Defendants admit that Walsh met with Dr. Gerald Katz on October 10, 2001 and that Dr. Katz recommended that Walsh meet with Dr. David Morin. The Defendants deny the remainder of the allegations contained in Paragraph 13 of the Complaint.

2



14.    The Defendants admit that Walsh met with Bradbury on October 11, 2001, but

deny the remaining allegations contained in Paragraph 14 of the Complaint.

15.    The Defendants admit that Walsh met with Dr. David Morin on October 31, 2001,

but deny the remaining allegations contained in Paragraph 15 of the Complaint.

16.    The Defendants admit that Walsh was terminated on November 28, 2001, but

deny the remaining allegations contained in Paragraph 16 of the Complaint.

**COUNT I**
**Sexual Discrimination Against Defendants**
**Healthcare South, P.C. and/or Physician Strategies, LLC**

17.    In answering Paragraph 17 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

18.    Denied.

19.    Denied.

**COUNT II**
**Sexual Discrimination Against Defendant John J. Bradbury, Jr.**

20.    In answering Paragraph 20 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

21.    Denied.

22.    Denied.

**COUNT III**
**Retaliation Against Defendant Healthcare South, P.C.**
**And/or Physician Strategies, LLC**

23.    In answering Paragraph 23 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

24.    Denied.

25.    Denied

3




## COUNT IV
### Retaliation Against John J. Bradbury, Jr.

26.    In answering Paragraph 26 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

27.    Denied.

28.    Denied.

## COUNT V
### Intentional Interference With An Advantageous Business Relationship by Defendant John J. Bradbury, Jr.

29.    In answering Paragraph 29 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

30.    Denied.

31.    Denied.

## COUNT VI
### Intentional Interference With A Contractual Relationship by Defendant John J. Bradbury

32.    In answering Paragraph 32 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

33.    Denied.

34.    Denied.

## COUNT VII
### Negligent Infliction of Emotional Distress Against Defendant Healthcare South, PC and/or Physician Strategies, LLC

35.    Paragraph 35 of the Complaint does not require a response in light of the Court's

Order dismissing Count VII.

36.    Paragraph 36 of the Complaint does not require a response in light of the Court's

Order dismissing Count VII.

4

## COUNT VIII
### Intentional Infliction of Emotional Distress Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

37.     Paragraph 37 of the Complaint does not require a response in light of the Court's

Order dismissing Count VIII.

38.     Paragraph 38 of the Complaint does not require a response in light of the Court's

Order dismissing Count VIII.

## COUNT IX
### Wrongful Discharge In Violation of Public Policy Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

39.     Paragraph 39 of the Complaint does not require a response in light of the Court's

Order dismissing Count IX.

40.     Paragraph 40 of the Complaint does not require a response in light of the Court's

Order dismissing Count IX.

41.     Paragraph 41 of the Complaint does not require a response in light of the Court's

Order dismissing Count IX.

## COUNT X
### Negligent Infliction of Emotional Distress
### Against Defendant John J. Bradbury, Jr.

42.     In answering Paragraph 42 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

43.     Denied.

## COUNT XI
### Intentional Infliction of Emotional Distress
### Against Defendant John J. Bradbury, Jr.

44.     In answering Paragraph 44 of the Complaint, the Defendants restate and

incorporate by reference their previous responses stated above.

45.    Denied.

## COUNT XII
### Wrongful Discharge In Violation of Public Policy
### Against Defendant John J. Bradbury, Jr.

46.    Paragraph 46 of the Complaint does not require a response in light of the Court's

Order dismissing Count XII.

47.    Paragraph 47 of the Complaint does not require a response in light of the Court's

Order dismissing Count XII.

48.    Paragraph 48 of the Complaint does not require a response in light of the Court's

Order dismissing Count XII.

### FIRST DEFENSE

Walsh has failed to state a claim upon which relief may be granted.

### SECOND DEFENSE

Walsh's claims are barred in whole or in part by the applicable statutes of limitations.

### THIRD DEFENSE

Walsh's claims are barred in whole or in part by her own wrongful conduct, and by the

doctrines of waiver, laches, and estoppel.

### FOURTH DEFENSE

Walsh's claims are barred in whole or in part by the exclusivity provisions of the

Massachusetts Workers' Compensation Act.

### FIFTH DEFENSE

Walsh's common-law claims are barred by the exclusivity provision of MGL Chapter

151B.

6

## SIXTH DEFENSE

Walsh's claim for sexual harassment fails because the allegedly harassing comments/conduct were not sufficiently severe and pervasive to rise to the level of actionable sexual harassment.

## SEVENTH DEFENSE

Walsh is not entitled to some or all of the relief requested in the Complaint because the Defendants would have taken the same action with regard to Walsh's employment regardless of any alleged impermissible factors.

## EIGHTH DEFENSE

Walsh's claims are barred in whole or in part because the Defendants' actions were justified by legitimate business reasons.

## NINTH DEFENSE

Some or all of Walsh's claims are barred because Healthcare South maintained, disseminated and enforced a clear policy against discrimination and harassment, establishing reasonable and effective means of reporting and seeking relief from conduct believed to be discriminatory or harassing, and because the Defendants acted in accordance with this policy at all times.

## TENTH DEFENSE

Walsh's retaliation claims are preempted by ERISA.

## ELEVENTH DEFENSE

All claims and allegations of discrimination that were not included in Walsh's charge filed with the MCAD or investigated by the MCAD are barred because of the failure to satisfy the statutory prerequisites or because of a lack of subject matter jurisdiction.

## TWELFTH DEFENSE

Walsh's claims are barred to the extent she has failed to mitigate any damages which she allegedly has suffered.

WHEREFORE, the Defendants deny that plaintiff Walsh is entitled to the relief demanded in the Complaint or to any other relief. Accordingly, the Defendants respectfully request that this Court dismiss the Complaint against them with prejudice, enter judgment for the Defendants, and award the Defendants their costs, attorney's fees, expenses and such other and further relief as the Court may deem appropriate.

> HEALTHCARE SOUTH, P.C., PHYSICIAN
> STRATEGIES, LLC, and JOHN BRADBURY, JR.,
>
> By their attorneys,
>
> *Neil P. Olson*
>
> Christine J. Wichers (BBO # 631857)
> Neil P. Olson (BBO # 651222)
> Choate, Hall & Stewart
> 53 State Street
> Boston, MA  02109
> (617) 248-5000

Dated:  May 21, 2004

3694654

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on _5/21/04_

*Neil P. Olson*

A TRUE COPY ATTEST:

CLERK

8

AUG 2 5 2003

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                                    SUPERIOR COURT

|  |  |  |
|---|---|---|
| JOAN WALSH, | ) | |
| Plaintiff, | ) | Civil Action No. 03-0354B |
| v. | ) | |
| HEALTHCARE SOUTH, P.C., PHYSICIAN STRATEGIES, LLC and JOHN BRADBURY, JR., | ) | |
| Defendants. | ) | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 2 5 2003

Fred R Powers
CLERK

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY

The Defendants move to dismiss all twelve counts in the Complaint with prejudice for

failure to state a claim. See MRCP 12(b)(6). As grounds for this motion, the Defendants state as

follows:

Plaintiff was employed by defendant Healthcare South, P.C. (the "Company") as a

human resources professional and was supervised by defendant Jack Bradbury. After Plaintiff

made internal reports about unidentified "failures by the Defendants to comply with regulations

concerning its retirement plan," Mr. Bradbury took the following actions: he (1) insisted that all

further communications to the plan trustees go through him; (2) told Plaintiff that when the new

company was formed, human resources services would not be offered; (3) insisted on being

present at any meetings Plaintiff held with the Company's office managers; and (4) told Plaintiff

not to use the title "Director." Mr. Bradbury also "began a campaign of sexual discrimination,

abuse, intimidation, and retaliation" by engaging in unidentified actions, and began

3573944v3

"disseminating [unidentified] false and defamatory information about the Plaintiff." Plaintiff was subsequently terminated.

Ten of the twelve counts in the Complaint are brought against all three Defendants. Specifically, Plaintiff has sued all the Defendants for gender discrimination, retaliation, intentional and negligent infliction of emotional distress, and wrongful discharge in violation of public policy. Plaintiff has asserted two additional claims against Mr. Bradbury alone: intentional interference with (a) an advantageous business relationship and (b) a contract. For the following reasons, each of these claims fails as a matter of law and should be dismissed with prejudice:

      1.     Plaintiff's common-law claims of gender discrimination brought against all three Defendants (Counts I and II) must be dismissed because such claims are barred by the exclusivity provision of MGL ch. 151B. Although Plaintiff could be permitted to amend her complaint to identify a statutory basis for her claims, and Defendants request this under Rule 12(e) as an alternative, it should be noted that any amendment would be fruitless. That is so because Plaintiff has admitted she was not terminated because of her gender, and because the Defendants' alleged sexual comments/conduct are not sufficiently severe or pervasive to rise to the level of actionable sexual harassment as a matter of law. Therefore, even if Plaintiff had properly stated Counts I and II under an employment discrimination statute, those counts would still have to be dismissed for failure to state a claim.

      2.     Plaintiff's common-law claims of retaliation brought against all three Defendants (Counts III and IV) must be dismissed because, to the extent Plaintiff alleges she was retaliated against for reporting violations of the Company's retirement plan, her claims are barred by ERISA, and, to the extent she contends she was retaliated against for reporting alleged sex

discrimination, her claims are barred by the exclusivity provision of MGL ch. 151B. With respect to the latter category, although Plaintiff could be permitted to amend her complaint to identify a statutory basis for her claims, and Defendants request this under Rule 12(e) as an alternative, it should be noted that any amendment to the retaliation claim against Mr. Bradbury (Count IV) would be fruitless. That is so because Plaintiff has failed to allege that Mr. Bradbury knew of her protected activity. Therefore, even if Plaintiff had properly stated Count IV under an employment discrimination statute, that count would still have to be dismissed for failure to state a claim.

      3.     Plaintiff's claims against Mr. Bradbury for intentional interference with an advantageous business relationship or a contract (Count V-VI) fail because they merely restate her alleged discrimination claim. These claims also fail because Plaintiff has not alleged that Mr. Bradbury acted with actual malice.

      4.     Plaintiff's claims for intentional and negligent infliction of emotional distress brought against all three Defendants (Counts VII-VIII and X-XI) must be dismissed because they are barred by the Massachusetts Workers' Compensation Act. These claims also fail because Plaintiff has failed to allege "extreme and outrageous" conduct by the Defendants, or that she suffered intolerable distress.

      5.     Plaintiff's claims for wrongful discharge in violation of public policy brought against all three Defendants (Counts IX and XII) must be dismissed because, to the extent the public policy invoked by Plaintiff is ERISA, her claims are preempted by ERISA, and, to the extent the public policy she invokes is prohibiting employment discrimination, her claims are barred by the exclusivity provision of MGL ch. 151B.

      A supporting Memorandum of Law is filed herewith.

3573944v3

WHEREFORE, Defendants respectfully request that the Court dismiss the entire Complaint with prejudice. In the alternative, Defendants respectfully request that the Court order Plaintiff to provide a more definite statement as to Counts I-IV and that it dismiss the remaining claims (Counts V-XII) with prejudice.

<u>Request for Oral Argument</u>

Pursuant to Superior Court Rule 9A(c), Defendants respectfully request a hearing on this motion.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN STRATEGIES, LLC, and JOHN BRADBURY, JR.,

By their attorneys,

Christine Wichers (BBO No. 631857)
Tricia A. Rice (BBO No. 633556)
Choate, Hall & Stewart
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  June 27, 2003

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVE
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND Fax
DATE 6/27/03 SIGNATURE

A TRUE COPY ATTEST

CLERK

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                          SUPERIOR COURT

|  |  |
|---|---|
| JOAN WALSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 03-0354B |
| v. ) | |
| ) | |
| HEALTHCARE SOUTH, P.C., PHYSICIAN ) | |
| STRATEGIES, LLC and JOHN BRADBURY, JR., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY

In a desperate attempt to resuscitate her defective Complaint, Plaintiff has tried to defeat

Defendants' Motion to Dismiss by doing nothing more than allege new facts that fall outside the

Complaint. These, of course, may not be considered by the Court when deciding a Rule 12(b)(6)

motion. See Gen. Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584

(1992) (in ruling on a 12(b)(6) motion, "[t]he plaintiff's claim must be based on facts set forth in

the complaint; all materials outside the pleadings are excluded from this review"). Stripped of

the new allegations, all twelve counts in Plaintiff's Complaint remain deficient. Indeed, Plaintiff

does not even oppose dismissal of three of them (Counts VII, VIII, and X).

**A.**      **Plaintiff's Claims of Sex Discrimination (Counts I and II) Fail as a Matter of Law.**

In Counts I and II, Plaintiff has alleged two forms of sex discrimination – discriminatory

discharge and sexual harassment – against all the defendants. Plaintiff states in her Opposition

that, although she neglected to identify a statute in her Complaint, she intended to bring Counts I

and II under MGL ch. 151B.[1]  (Opp. at 7)  This new information does not save her claims, for the

reasons stated in Defendants' principal brief and reiterated below.

First, to the extent Plaintiff asserts she was terminated because of her gender, her

discrimination claims fail as a matter of law because she has admitted that she was terminated

"in retaliation for her efforts to expose improper and illegal business practices," and *not* because

of her gender.  Complaint ¶ 16.  In her Opposition, Plaintiff disputes this fact by pointing to

paragraphs 11-16 of her Complaint.  (Opp. at 8)  Nowhere in any of these paragraphs, however,

does Plaintiff allege that her termination resulted from her gender.  On the contrary, in

paragraphs 11-16 Plaintiff has asserted that she was "wrongfully terminated by the Defendants"

for one reason and one reason only:  "retaliation for her efforts to expose improper and illegal

business practices."  In light of this admission, Counts I and II must be dismissed insofar as they

allege discriminatory termination.

Second, to the extent Plaintiff has alleged sexual harassment (specifically, a hostile

sexual environment created by defendant Bradbury), her claims fail because it is clear from the

face of the Complaint that Mr. Bradbury's alleged sexual conduct/comments were not

sufficiently severe and pervasive to rise to the level of sexual harassment as a matter of law.  See

Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2001) (to state a claim for sexual

harassment, "the conduct alleged [must be] sufficiently severe and pervasive to interfere with a

reasonable person's work performance").  In her Opposition, Plaintiff alleges a host of gender-

---

[1] If the Court does not dismiss Counts I and II for failure to state a claim, Plaintiff should be required to amend her
Complaint under Rule 12(e) to make clear that the basis for her claims is MGL ch. 151B.  Currently one might infer
from her Complaint that the basis for her claims is the federal anti-discrimination statute, Title VII of the Civil
Rights Act of 1964, which is different from Chapter 151B in several respects.  See Cuddyer v. Stop & Shop
Supermarket Co., 434 Mass. 521, 536 (2001) ("In construing G.L. c. 151B, we frequently do not follow the
reasoning of Federal appellate decisions applying Title VII.").  Defendants cannot adequately defend themselves if
they do not know the statutory basis of claims filed against them.  See, e.g., Kveragas v. Scottish Inns, Inc., 96
F.R.D. 425, 426 (E.D. Tenn. 1983) (granting Rule 12(e) motion because defendants "are entitled to know what
statute they supposedly violated").

2

based comments – as well as numerous race-based and age-based comments which have nothing whatsoever to do with this case. (Opp. at 3-4, 5-6) However, because none of those allegations appear in the Complaint, they may not be considered in the Rule12(b)(6) analysis. See Gen. Motors Acceptance Corp., 413 Mass. at 584. Plaintiff admits that, when stripped of these new allegations, her sexual harassment claim is based on only *two* allegations against Mr. Bradbury. Specifically, that he engaged in:

> 1) belittling persons in the office by referring to them derogatorily as "a bunch of women"; and 2) saying that he would not tolerate Plaintiff (the Human Resources Director) or the Billing Manager – also a woman – having a "director" title.

(Opp. at 5-6) It is crystal clear that these two allegations, standing alone, do not rise to the level of actionable sexual harassment as a matter of law. See, e.g., Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 447 n.9 (1995) ("isolated or ambiguous remarks, tending to suggest animus based on [sex], are insufficient, standing alone, to provide an employer's discriminatory intent") (internal quotation omitted); Carlton v. Worcester Sch. Dist., 14 MDLR 1143, 1147 (1992) (a "steady barrage of opprobrious . . . comment[s]" is required to establish unlawful harassment); Daigle v. NECX, Inc., 2001 WL 1199868, at * 4-5 (Mass. Super. Ct. 2001) (granting defendant's 12(b)(6) motion to dismiss sexual harassment claim based on allegation that plaintiff's supervisor made statements about women's body parts, referred to women as "beavers," and said "you girls are too emotional," because "sporadic statements cannot demonstrate the level of pervasiveness and severity necessary to establish a claim of sexual harassment").

　　　　For these reasons, Counts I and II must be dismissed.

3596948v3

**B.    Plaintiff's Claim for Retaliation Against Defendant Bradbury (Count IV) Fails as a Matter of Law.**

In her Opposition Plaintiff has clarified that, although she neglected to identify a statutory basis for her claims of retaliatory discharge (Counts III and IV), she intended to bring them under MGL ch. 151B.  See Opp. at 8 (citing MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996), where the plaintiff brought an unsuccessful retaliation claim under Chapter 151B).[2] Even with this clarification, Plaintiff cannot defeat Defendants' motion to dismiss the retaliation claim against defendant Bradbury (Count IV) because Plaintiff has not alleged that Mr. Bradbury knew that Plaintiff had complained of alleged sexual harassment.[3]

"To establish a prima facie case of retaliation" under Chapter 151B, "a plaintiff must show that he engaged in legally protected conduct; he suffered an adverse employment action; and a causal connection existed between the protected conduct and the adverse action." Mole v. Univ. of Mass., 58 Mass. App. Ct. 29, 39, review granted, 439 Mass. 1109 (2003). "[T]o satisfy the causation element of the prima facie case," a plaintiff must allege, at a minimum, that she engaged in protected activity under Chapter 151B and that the decisionmaker had "knowledge thereof." Id. at 41.  If a complaint does not contain such an allegation, then the plaintiff has failed to state a prima facie case under Chapter 151B and the claim must be dismissed. See, e.g., Daigle, 2001 WL 1199868, at *5 (allowing Rule 12(b)(6) motion to dismiss ch. 151B retaliation claim because plaintiff's complaint did not allege sufficient facts to make out a prima facie case);

---

[2] To the extent Plaintiff still asserts common-law claims for retaliation for reporting alleged improprieties in the administration of Defendants' retirement plan, those claims would be actionable only under a wrongful termination theory (which Plaintiff has already pled in Counts IX and XII), were they not fatally deficient due to their preemption by ERISA.  See infra section E(2); Def. Brief, pp. 6-7.

[3] For the reasons stated in footnote 1, Plaintiff should be required to amend her Complaint to identify the statute under which she has brought Count III (and also, if it is not dismissed, Count IV).  If she does not do so, Count III should be dismissed because it states only a common-law claim for retaliation for reporting alleged sexual harassment, and such claims are not actionable because they are preempted by Chapter 151B.  "Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive." Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996).

4

Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir. 2002) (allowing Rule 12(b)(6) motion to dismiss retaliation claim because plaintiff failed to allege that defendant knew of plaintiff's protected activity and thus failed to state a prima facie case).

Frazier is instructive. There the First Circuit affirmed a Rule 12(b)(6) dismissal of a retaliation claim brought under Title IX, the federal law prohibiting discrimination in education. The court, adopting the Title VII analysis, noted that a plaintiff fails to state a prima facie case of retaliation if she does not allege "facts sufficient to show that she engaged in activity protected [by the statute], *that the alleged retaliator knew of the protected activity,* that the alleged retaliator subsequently undertook some action disadvantageous to the [plaintiff], and that a retaliatory motive played a substantial part in prompting the adverse action." 276 F.3d at 67 (emphasis added). The First Circuit affirmed dismissal of the plaintiffs' retaliation claim because "[t]he plaintiffs do not allege that [the purported retaliator] knew they had complained about [harassment]." Id.

The facts in this case are similar to those in Frazier in that Plaintiff has failed to allege that the purported retaliator, Mr. Bradbury, knew about Plaintiff's alleged complaint of harassment. Plaintiff has averred that she made a complaint of sexual harassment to Drs. Katz and Morin, but not defendant Bradbury. Complaint, ¶¶ 13, 15. Nor has she alleged that, before he terminated Plaintiff, Mr. Bradbury somehow learned of her alleged complaint from Dr. Katz or Dr. Morin. Accordingly, the retaliation claim against Mr. Bradbury (Count IV) must be dismissed. See Frazier, 276 F.3d at 67.

**C.**    **Plaintiff's Claims of Intentional Interference With Advantageous Business Relations and/or Contract (Counts V and VI) Fail as a Matter of Law.**

In their principal brief, Defendants cited several cases for the proposition that where, as here, a plaintiff's intentional interference claims are merely recast versions of her Chapter 151B

5

discrimination claims, they must be dismissed because Chapter 151B is the exclusive remedy

under state law for claims of employment discrimination. (Def. Brief at 8-9) Contrary to

Plaintiff's contention, see Opp. at 13-14, this is true whether or not a plaintiff has complied with

Chapter 151B's procedural requirements by filing a complaint with the MCAD before filing in

court. See, e.g., Bossi v. Town of Billerica, 2001 WL 1660847, at *6 (Mass. Super. Ct. Dec. 21,

2001) (notwithstanding plaintiff's filing of an MCAD charge, court allowed Rule 12(b)(6)

motion to dismiss intentional interference claim because "to the extent that the . . . claim is based

on unlawful discrimination, the count is barred by the exclusivity provision of G.L. c. 151B");

Andrews v. Cressy, 1998 WL 157002, at *3 (Mass. Super. Ct. Mar. 4, 1998) (notwithstanding

plaintiff's filing of an MCAD charge, court allowed Rule 12(b)(6) motion to dismiss intentional

interference claim because "plaintiffs' claims for intentional interference with contractual rights .

. . are . . . based upon [defendant's] alleged wrongful discrimination" and, therefore, "the

exclusivity provision of c. 151B applies"); Schutz v. Go Ahead Vacations, Inc., 1999 WL

959681, at * 4 (Mass. Super. Ct. Sept. 1, 1999) (notwithstanding plaintiff's filing of an MCAD

charge, court entered summary judgment on plaintiff's intentional interference claim because

"her exclusive remedy is to be found [in] G.L.c. 151B").

D.    **Plaintiff's Claims of Intentional and Negligent Infliction of Emotional
       Distress (Counts VII-VIII and X-XI) Fail as a Matter of Law.**

In her Opposition, Plaintiff has not opposed Defendants' motion insofar as Defendants

seek to dismiss Plaintiff's claims against the corporate Defendants for intentional and negligent

infliction of emotional distress, or her claim against defendant Bradbury for negligent infliction

of emotional distress (Counts VII, VIII, and X). See Opp. at 15-18. Therefore, those claims

must be dismissed.

Plaintiff is left with one remaining claim: intentional infliction of emotional distress against Mr. Bradbury (Count XI). That claim also must be dismissed because it is barred by the Worker's Compensation Act, MGL ch. 152 (the "Act"). The Act provides the sole remedy for an employee's intentional tort claim against their supervisor if the "complained-of conduct related wholly to his position as [plaintiff's] supervisor and to the manner in which [he] exercised his supervisory duties." Anzalone v. MBTA, 403 Mass. 119, 125 (1988); accord Mullen v. Ludlow Hosp. Soc'y, 32 Mass. App. Ct. 968, 970 (1992) (affirming summary judgment against employee on his intentional infliction claim against his supervisors because their alleged conduct – persistently criticizing the plaintiff's work and eventually terminating him – occurred "in the exercise by [the supervisors] of their supervisory duties in furtherance of the employer's interest").

Anzalone, where the SJC affirmed dismissal of an intentional infliction claim based on allegations far more egregious than defendant Bradbury's alleged conduct, is instructive. Anzalone was an MBTA police officer who alleged that he had rescued a person from a dangerous place while in the line of duty, and in doing so had inhaled a substantial amount of smoke, which had disabled him for over four years. Anzalone, 403 Mass. at 120. Anzalone averred that when he returned to work, the defendant supervisor criticized his work performance; ordered him to wash a car in violation of his light duty order; ordered him to perform dirty and menial jobs; and required that for every doctor's visit Anzalone bring in a doctor's note stating the time he arrived at his appointment, the time he left, and what was done. Id. at 122-23. He also alleged that, in an effort to exacerbate Anzalone's medical condition, the defendant supervisor assigned him to work in a 105-degree room with no ventilation; sent people smoking cigarettes into his office; and had people paint outside his office. Id. at 123. The trial court

7

allowed the supervisor's Rule 12(b)(6) motion to dismiss Anzalone's intentional infliction claim

because it was barred by the Act. See id. at 125. The SJC affirmed, reasoning as follows:

> [The supervisor's] complained-of conduct related wholly to his
> position as Anzalone's supervisor and to the manner in which [he]
> exercised his supervisory duties. The conduct complained of arose in
> the course of employment by the MBTA of Anzalone and [the
> defendant supervisor]. Thus, these claims are covered exclusively by
> c. 152.

Id.; see also Fusaro v. Blakely, 40 Mass. App. Ct. 120, 124 (1996) (where hospital police officers

told hospital pharmacy technician that they would have him fired if he did not confess to

participating in drug-related activity at the hospital, and that they would arrange to have someone

plant drugs in his car and then have him arrested, technician's intentional infliction claims

against the officers failed because, "[h]owever distorted the defendants' understanding of the

proper performance of their duties may have been, we cannot say that they were acting outside

the scope of their employment").

Plaintiff has not even tried to distinguish Anzalone. Instead, she relies on a case with

easily distinguishable facts. See Opp. at 17-18 (citing Brown v. Nutter, McClennen & Fish, 45

Mass. App. Ct. 212 (1998)). In Brown, a legal secretary alleged that her supervising attorney

"manipulated and compelled her to conduct his personal affairs both during and outside of work

hours"; "used her to conceal his personal problems"; and, by threatening suicide, forced her to

"forge his wife's signature on a mortgage note for his home and then notarize the forged

document." Id. at 213. The court of appeals correctly held that the claim should not have been

dismissed because the supervisor "was acting for his own personal gain and not to further the law

firm employer's interest." Id. at 218.

Here, Plaintiff has not alleged that defendant Bradbury, like the lawyer in Brown, was

acting "for his own personal gain." Id. Instead, she has alleged that he stopped Plaintiff's

8

meetings with the staff, asked that she not use the "director" title within the organization, and

referred to the female employees as "a bunch of women." Complaint, ¶¶ 11, 14. Monitoring the

conduct of subordinates and the use of titles within an organization is well within the scope of a

supervisor's responsibilities. Just as in Anzalone and Fusaro, the conduct complained of

demonstrates merely how Mr. Bradbury exercised his supervisory powers. Therefore, the

intentional infliction claim against him is barred by the Act and must be dismissed.[4]

**E.    Plaintiff's Claims for Wrongful Termination in Violation of
Public Policy (Counts IX and XII) Fail as a Matter of Law.**

Although Plaintiff claims her termination was wrongful in that it violated a public policy,

her Complaint fails to identify the alleged public policy. From the face of her Complaint, there

are only two possibilities: (1) prohibiting employment discrimination and retaliation, or (2)

encouraging the reporting of benefit plan violations. (See Opp. at 14-15) Plaintiff cannot state a

claim for wrongful termination under either theory.

**1.    To the Extent the Public Policy Invoked by Plaintiff Is the Prohibition
Against Employment Discrimination and Retaliation, Plaintiff's Claims
Are Barred by the Exclusivity Provision of MGL Chapter 151B.**

To the extent the public policy invoked by Plaintiff is the prohibition against employment

discrimination and retaliation, her wrongful termination claims are barred by the exclusivity

provision of MGL Chapter 151B. As explained in section C, supra, "[c]ommon law claims that

are 'merely recast versions' of [a plaintiff's] employment discrimination claims are barred" by

Chapter 151B. Schutz v. Go Ahead Vacations, 1999 WL 959681, at *4 (Mass. Super. Ct. Sept.

1, 1999) (quoting Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996)). Contrary to

Plaintiff's contention, see Opp. at 15, this is true whether or not the plaintiff has complied with

---

[4] Plaintiff's intentional infliction claim against Mr. Bradbury also fails because Plaintiff has failed to allege (a) that he engaged in any "extreme and outrageous" conduct, or (b) that she "suffered distress so severe that no reasonable person could be expected to endure it." See Def. Brief, p.11 n.3, and cases cited therein.

the procedural requirements of Chapter 151B. See, e.g., DeBarboza v. Cablevision of Boston,

Inc., 1999 WL 65489, at *3 (Mass. Super. Ct. 1999).

    The plaintiff in DeBarboza alleged that he was wrongfully terminated in violation of

public policy because he complained of alleged discrimination. Id. The court allowed the

defendant's Rule 12(b)(6) motion to dismiss the claim because the exclusive remedy for the

plaintiff, who had filed an MCAD charge, was under Chapter 151B. Id. The court stated:

> Massachusetts disfavors the creation of duplicative remedies and does
> not allow a common law employee discharge claim based on public
> policy in cases where a comprehensive legislative remedy is available
> to the plaintiff. Common law public policy claims are barred in
> wrongful discharge cases where a state statutory remedy for the
> alleged public policy violation is available and provides a private
> cause of action. Because DeBarboza has a remedy for wrongful
> discharge based on retaliation pursuant to G.L. c. 151B § 4(4), as
> alleged in . . . his Verified Complaint, his common law claim for
> wrongful discharge must be dismissed.

Id. (citations omitted). For the same reason, Plaintiff's wrongful termination claims must be

dismissed, to the extent they are based on the public policy against discrimination and retaliation

in employment.

### 2. To the Extent the Public Policy Invoked by Plaintiff Is to Encourage the Reporting of Benefit Plan Violations, Plaintiff's Claims Are Barred by ERISA.

    To the extent that Plaintiff's wrongful termination claims are based on the public policy

in favor of reporting benefit plan violations, Plaintiff's claims are barred by ERISA. Section

514(a) of ERISA provides that "the provisions of this chapter shall supercede any and all State

laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §

1444(a). "A law 'relates to' an employee benefit plan ... if it has a connection with or reference

to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98 (1983). "Under this broad

common sense meaning, a state law may 'relate to' a benefit plan, and thereby be preempted,

even if the law is not specifically designed to affect such plans, or the effect is only indirect."
Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).  "Congress intended that ERISA's
preemption provision be broadly construed."  Pace v. Signal Tech. Corp., 417 Mass. 154, 156
(1994).

Courts have uniformly held that claims for wrongful discharge in violation of public
policy based on alleged retaliation for reporting benefit plan violations "relate to" ERISA plans
and are thus preempted.  See, e.g., Andrews v. Alaska Op. Eng'rs-Employers Training Trust
Fund, 871 P.2d 1142, 1145 (Alaska 1994) (holding that ERISA preempted employee's claim that
he was wrongfully terminated to prevent him from reporting possible misuse of funds in an
employee welfare benefit plan); McClintock v. Timber Prods. Mfgrs., Inc., 21 P.3d 328, 332
(Wash. Ct. App. 2001) (holding that ERISA preempted employee's claim that he was wrongfully
terminated for reporting "alleged violations of laws related to administration of [his employer's]
401(k) retirement plan"); Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311, 1314 (5th Cir. 1994)
(holding that ERISA preempted employee's claim that he was wrongfully terminated for "his
refusal to carry out violations of ERISA," such as signing payment invoices without trustee
approval, and for "reporting such violations to management"); Hashimoto v. Bank of Hawaii,
999 F.2d 408, 409, 409-10 (9th Cir. 1993) (holding that ERISA preempted employee's claim that
she was wrongfully terminated for reporting "potential and/or actual violations by [her employer]
of the reporting and disclosure requirements and fiduciary standards of ERISA," such as her
employer's making an improper payment from a profit-sharing plan); McSharry v.
UnumProvident Corp., 237 F. Supp. 2d 875, 880 (E.D. Tenn. 2002) (holding that ERISA
preempted employee's claim that he was wrongfully terminated for "refus[ing] to participate in
and remain silent about" allegedly improper disability insurance claim denials).

11

The case of <u>McClean v. Carlson Cos.</u>, 777 F. Supp. 1480 (D. Minn. 1991), is particularly

helpful in understanding why such retaliation claims are uniformly preempted by ERISA. In

<u>McClean</u>, the plaintiff worked in the defendant's benefits department. <u>Id.</u> at 1481. Plaintiff

maintained that the defendant terminated her employment because she reported violations of

federal law in connection with the administration of the benefit plan, thereby stating a claim

under the state whistleblower statute. <u>Id.</u> The court held that ERISA preempted this claim

because, to prove her claim, the plaintiff would have to "describe the conduct she perceived to be

violative of ERISA with reference to ERISA provisions which the conduct purportedly

contravened." <u>Id.</u> at 1483. Because the "[p]laintiff's claim refer[red] to the plan and depend[ed]

upon its existence," it was sufficiently related to ERISA to be preempted. <u>Id.</u>

Significantly, Plaintiff has not cited *a single case* where an employee's claim that they

were terminated for reporting violations of an employee welfare benefit plan was held not to be

preempted by ERISA. Instead, Plaintiff has cited to one and only one decision, and that case is

inapposite. <u>See</u> Opp. at 9-10 (citing <u>Pace v. Signal Tech. Corp.</u>, 417 Mass. 154 (1994)).

<u>Pace</u> did not concern a claim for wrongful termination or retaliation for whistleblowing.

Instead, the plaintiff sued his former employer for misrepresentation. <u>Pace</u>, 417 Mass. at 155.

Specifically, he alleged that his ex-employer had misrepresented that his long-term disability

insurance would continue until the end of his severance pay period. <u>Id.</u> Unlike the retaliation

cases discussed above, where the allegations were based upon wrongdoing under ERISA plans,

the plaintiff in <u>Pace</u> conceded that he was, in fact, ineligible for benefits under the plan. <u>Id.</u> at

157. The SJC framed the question before it as "whether ERISA preempts a State claim arising

from an employer's misrepresentation that an employee has a benefit which, in fact, he does not

have." <u>Id.</u> at 158. The court ruled: "Because Pace is not seeking benefits under a plan, and

12

because, if he ultimately prevails, any award against [his employer] would not directly affect the administration of benefits under the plan, his claims do not relate to ERISA and are not preempted." Id. at 159-60 (internal quotation omitted).

Here, in contrast to Pace, the Plaintiff's claims are for wrongful discharge, not misrepresentation, and they have nothing to do with an employee's entitlement or lack of entitlement to benefits. As noted above, courts have uniformly held that claims for wrongful discharge in violation of public policy based on alleged retaliation for reporting benefit plan violations, such as Plaintiff's claim that she was fired for reporting alleged improprieties in Defendants' administration of its retirement plan, are preempted by ERISA. See Andrews, McClintock, Anderson, Hashimoto, McSharry, and McClean, supra.

## CONCLUSION

For the reasons stated herein and in Defendants' principal brief, Defendants respectfully request that all twelve counts in the Complaint be dismissed with prejudice.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN
STRATEGIES, LLC, and JOHN BRADBURY, JR.,

By their attorneys,

Christine Wichers (BBO No. 631857)
Tricia A. Rice (BBO No. 633556)
Choate, Hall & Stewart
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  August 22, 2003

## COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, ss.**                    **SUPERIOR COURT**
                                     **CIVIL ACTION**
                                     **NO. 2003-0354**

### JOAN WALSH

#### vs.

### HEALTHCARE SOUTH, P.C. and others[1]

### ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The plaintiff, Joan Walsh, brought this action against the defendants, Healthcare South,

P.C., Physician Strategies and John Bradbury, Jr. (Bradbury). The complaint includes claims

against each defendant for gender discrimination, retaliation, negligent infliction of emotional

distress, intentional infliction of emotional distress, and wrongful termination. The complaint

also includes claims against Bradbury for intentional interference with an advantageous business

relationship and intentional interference with a contractual relationship. This matter is before the

court on the defendants' motion to dismiss all counts of the complaint for failure to state a claim

pursuant to Mass. R. Civ. P. 12(b)(6). The plaintiff, in addition to opposing the defendants'

motion to dismiss on substantive grounds, moves the court for leave to amend the complaint

pursuant to Mass. R. Civ. P. 15(a) to address any defects in the complaint.

The defendants' motion to dismiss is **ALLOWED** as to Count VII (Negligent Infliction

of Emotional Distress Against Defendants Healthcare South, P.C. and Physician Strategies, LLC)

and Count VIII (Intentional Infliction of Emotional Distress Against Defendants Healthcare

South, P.C. and Physician Strategies, LLC). Even assuming the court were to allow the plaintiff

to amend her complaint with respect to these claims, the plaintiff could plead no set of facts

---

[1]Physician Strategies, LLC and John J. Bradbury, Jr.

entitling her to relief. The Worker's Compensation Act, G.L. c. 152, provides the exclusive remedy for personal injuries arising out of the course of employment, and includes intentional and negligent infliction of emotional distress claims. See <u>Doe</u> v. <u>Purity Supreme, Inc.</u>, 422 Mass. 563 (1996).[2]

The defendants' motion to dismiss is further **ALLOWED** as to Counts IX (Wrongful Discharge In Violation of Public Policy Against Defendant Healthcare South, P.C. and/or Physician Strategies, LLC) and XII (Wrongful Discharge In Violation of Public Policy Against Defendant John J. Bradbury, Jr.) of the complaint. Insofar as the plaintiff's wrongful termination claim is based on the defendants' alleged gender discrimination, her claim is barred by the exclusivity provision of G.L. c. 151B. See <u>Green</u> v. <u>Wyman-Gordon Co.</u>, 422 Mass. 551, 558 (1996). Insofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by the Employee Retirement Income Security Act. See <u>Fairneny</u> v. <u>Savogran Co.</u>, 422 Mass. 469 (1996). See also 29 U.S.C. § 1002(14)(A) (including within the definition of fiduciary, "any administrator, officer, trustee, or custodian.").

The court makes no ruling as to the remaining counts of the complaint. The court **ALLOWS** the plaintiff's motion to amend her complaint pursuant to Mass. R. Civ. P. 15(a),

---

[2]To note, the motion to dismiss is not allowed as to Count X (Negligent Infliction of Emotional Distress Against Defendant John J. Bradbury, Jr.) because the plaintiff, by amending her complaint, may plead facts showing that defendant Bradbury was not acting in the course of his employment during his alleged negligent acts. See <u>Saharceski</u> v. <u>Marcure</u>, 373 Mass. 304, 306 (1997). Moreover, the motion to dismiss is not allowed as to Count XI (Intentional Infliction of Emotional Distress Against Defendant John J. Bradbury, Jr.) because the plaintiff, by amending her complaint, may plead facts showing that defendant Bradbury was not acting in the course of his employment and in the furtherance of the employer's interests during his alleged intentional acts. See <u>Faruso</u> v. <u>Blakely</u>, 40 Mass. App. Ct. 120, 123 (1996).

2

thereby allowing the plaintiff to plead those facts necessary to cure the alleged defects raised by

the defendants' memorandum in support of its motion to dismiss.

Gary A. Nickerson
Justice of the Superior Court

DATED: April **26** , 2004

3

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                           SUPERIOR COURT

                                                        *CA03 - 0354B*

)
JOAN WALSH,                              )
                                         )
            Plaintiff,                   )
                                         )
                                         )     Civil Action No. 03~0345B
v.                                       )
                                         )  
HEALTHCARE SOUTH, P.C., PHYSICIAN        )
STRATEGIES, LLC, and JOHN J. BRADBURY,   )
JR.,                                     )
                                         )
            Defendants.                  )
                                         )

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO QUASH DEPOSITION SUBPOENAS AND LIMIT DISCOVERY

The Defendants, pursuant to Mass. R. Civ. P. 26(c), respectfully submit this Motion to quash the Plaintiff's deposition subpoenas of third parties Jed Cohen and Jed Cohen & Co, attached hereto at Exhibit A, and to prevent future discovery concerning the administration of Defendant Healthcare South, P.C.'s ("HcS") retirement plan. As grounds therefor Defendants state that neither Mr. Cohen nor any employees of Jed Cohen & Co, which performed retirement plan audits for HcS, can offer any evidence which is relevant or reasonably calculated to lead to the discovery of admissible evidence in this matter because the Plaintiff's only claims relating to the administration of HcS's retirement plan have been dismissed with prejudice. Accordingly, the undue burden, expense and inconvenience which the depositions would cause the Defendants is not balanced by *any* discovery benefit to the Plaintiff. Similarly, any future discovery on this matter would be futile.

As further grounds for this Motion, the Defendants state:

1.      The Plaintiff was employed by HcS as a human resources professional. See Complaint ¶ 6. She alleges that she was responsible for the administration of the retirement plan offered to the employees of HcS. See id. ¶ 7. Further, she alleges that she identified and reported numerous failures by HcS to comply with regulations concerning this retirement plan. See id. ¶ 8. In her Complaint, the Plaintiff claimed, inter alia, that she was wrongfully terminated in retaliation for her efforts to expose improper and illegal business practices relating to the administration of HcS's retirement plan. See id. ¶ 16.

2.      Jed Cohen & Co. was retained by HcS to audit its retirement plan on an annual basis from 1999 to 2002 in connection with HcS's reporting obligations under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a).

3.      The Complaint contained 12 counts. In particular, in Counts 9 and 12, the Plaintiff accused the Defendants of wrongful termination in violation of public policy, based on her alleged efforts to "expose improper and illegal business practices" related to the retirement plan. The remainder of the counts plead sex discrimination, infliction of emotional distress, and interference with contractual relations.

4.      The Defendants moved to dismiss all counts of the Complaint. With respect to Counts 9 and 12, the Defendants argued that the claims failed as a matter of law because they were preempted by ERISA. See Memo. in Support of Defs.' Mot. to Dismiss (June 27, 2003), at 6-7, 10-12 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990) (ERISA preempted claim that plaintiff was wrongfully terminated because of employer's desire to avoid contributing to its pension fund); Fairneny v. Savogran Co., 422 Mass. 469, 472 (1996) (ERISA preempted claim that plaintiff was wrongfully terminated in retaliation for carrying out a fiduciary duty in connection with an ERISA-governed employee benefit plan); McLean v.

2

Carlson Cos., 777 F. Supp. 1480, 1482 (D. Minn. 1991) (ERISA preempted claim that plaintiff

was wrongfully terminated for complaining about alleged violations of ERISA-governed plan);

McClintick v. Timber Prods. Mfg., Inc., 21 P.3d 328, 333-34 (Wash. Ct. App. 2001) (same);

Andrews v. Alaska Operating Eng'rs-Employers Training Trust Fund, 871 P.2d 1142, 1144-48

(Alaska 1994) (same)).

     5.     On April 26, 2004, the Court allowed the Defendants' motion to dismiss in part

and denied it in part.[1]  In particular, the Court allowed the Defendants' motion to dismiss the

counts alleging wrongful termination in violation of public policy (Counts 9 and 12). See Order

on Defendant's Motion to Dismiss (Apr. 26, 2004), at 2.  The Court reasoned that "insofar as the

plaintiff alleges she was wrongfully terminated because she reported possible benefit plan

violations, such a claim would be preempted by the Employee Retirement Income Security Act."

See id.

     6.     Under the Massachusetts Rules of Civil Procedure, discovery is generally

permissible where the documents or information sought are relevant to the pending action or

reasonably calculated to lead to the discovery of admissible evidence. Mass. R. Civ. P. 26(b)(1);

Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 414 Mass 609, 615

(1993).  The Court may issue a protective order providing, inter alia, that the discovery not be

had; that certain matters not be inquired into; or that the scope of the discovery be limited to

certain matters. See Mass. R. Civ. P. 26(c)(1), (4), (7); E. A. Miller, Inc. v. South Shore Bank,

405 Mass. 95, 99-100 (1989).  It possesses "exceptionally broad remedial powers" to insure that

---

[1] The Court allowed the Plaintiff to amend two counts in her Complaint. Specifically, the Court allowed her to amend her emotional distress claims against the individual defendant, by "plead[ing] facts showing that [he]. . . was not acting in the course of his employment during his alleged negligent acts…[or] acting in the course of his employment and in the furtherance of the employer's interests during his alleged intentional acts." Order on Defendant's Motion to Dismiss (Apr. 26, 2004) at 2 & n.2. *The Court did not allow the Plaintiff to amend Counts 9 or 12.*

discovery between parties *and from third parties* comports with justice, and to protect any "party or person" from "annoyance, embarrassment, oppression, or undue burden or expense." Mass. R. Civ. P. 26(c); see 7 James W. Smith & Hiller B. Zobel, Massachusetts Practice -- Rules Practice § 26.7 (West 1975); GTE Products Corp. v. Stewart, 414 Mass. 721, 725 (1993).

7.    Following the Court's Order on the Defendants' Motion to Dismiss, *any discovery* concerning HcS's retirement plan, including the depositions of Mr. Cohen and Jed Cohen & Co., is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because it has no bearing on the pending counts in the Complaint.[2]  See, e.g., Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 781 (1st Cir. 1988) ("[T]he purpose of discovery is to enable parties to an action to obtain material 'which is relevant to the subject matter in the pending action,' a purpose that obviously can no longer be served once a case has been dismissed.") (internal citation omitted); Hathaway v. Stone, 687 F.Supp. 708, 711 & n.1 (D. Mass. 1988) (denying the plaintiff's request for discovery on claim that the court dismissed).  In addition, such discovery serves only to create a hardship on the Defendants (not to mention the third-party deponents themselves) due to the undue burden, inconvenience and expense associated with attending depositions and/or responding to future discovery requests.

8.    In light of the above, the Defendants respectfully request that this Court limit the scope of discovery by (1) quashing the deposition notices of Jed Cohen and Jed Cohen & Co., and (2) prohibiting the Plaintiff from serving future discovery requests on Defendants or third parties concerning the administration of HcS's retirement plan.  A proposed order is attached hereto at Exhibit B.

---

[2] During the parties' Superior Court Rule 9C discovery conference on December 10, 2004, the Plaintiff's counsel acknowledged that the Court had dismissed the counts of the Complaint related to the retirement plan, but stated that he disagreed with the ruling and wanted to "flush out" the issue.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that their Motion For

Protective Order To Quash Deposition Subpoenas And Limit Discovery be granted.

## REQUEST FOR HEARING

The Defendants respectfully request a hearing on the matters addressed in this Motion.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN
STRATEGIES, LLC, and JOHN J. BRADBURY, JR.,

By their attorneys,

Christine J. Wichers (BBO # 631857)
Gretchen Lundgren Edson (BBO # 644742)
Choate, Hall & Stewart
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: December 15, 2004

3778533v1

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL HAND ON: 12.15.04
and
fax

A TRUE COPY ATTEST

CLERK

5

**Commonwealth of Massachusetts**
**County of Plymouth**
**The Superior Court**

Civil Docket **PLCV2003-00354**

RE:   Walsh v Healthcare South P.C. et al

TO:   Edward M Swartz, Esquire
      Swartz & Swartz
      10 Marshall Street
      Boston, MA 02108

### CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **02/11/2005**:

*RE: Defts' MOTION for Protective Order to quash deposition subpoenas and limit discovery; pltff's opposition (pltff's request for hearing)*

**is as follows:**

**MOTION (P#32) Motion to Quash is Denied. (Thomas A. Connors, Justice). Notices mailed February 11, 2005**

Dated at Plymouth, Massachusetts this 11th day of February, 2005.

                                        Francis R. Powers,
                                        Clerk of the Courts

                            BY:

                                        Adam Baler
                                        Assistant Clerk

Telephone: (508) 747-6911

Copies mailed 02/11/2005

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                                      SUPERIOR COURT

JOAN WALSH,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )          Civil Action No. 03-0345B
                                     )
HEALTHCARE SOUTH, P.C., PHYSICIAN    )
STRATEGIES, LLC, & JOHN J. BRADBURY, JR., )
                                     )
            Defendants.              )
                                     )

## DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 11, 2005 ORDER DENYING THE DEFENDANTS' MOTION FOR PROTECTIVE ORDER

The Defendants respectfully request that the Court reconsider its Order denying the

Defendants' Motion for Protective Order to Quash Deposition Subpoenas and Limit Discovery

("Motion for Protective Order") (P#32). The Court denied the Defendants' motion without

comment in a written Order dated February 11, 2005 (Exhibit A). The basis of the Defendants'

Motion for Protective Order is that they seek to prohibit the Plaintiff from obtaining discovery on

the Defendants' 401k plan because Judge Gary Nickerson, in an order dated April 26, 2004,

dismissed all of the Plaintiff's claims relating to the Defendants' 401k plan. See Exhibit B.

### FACTS AND ARGUMENT

Plaintiff is a former employee of the Defendants. She filed an MCAD charge, accusing

the Defendants of, inter alia, terminating her in retaliation for complaining about alleged sexual

harassment in violation of MGL ch. 151B. She then moved her case to Superior Court. She

asserted twelve claims. Only four of them (Counts 3, 4, 9, and 12) are relevant here.

In the body of her Complaint, Plaintiff asserted that she was terminated because she complained about alleged sexual harassment and/or because she complained about alleged improprieties in the administration of Defendants' 401k plan. See Compl., ¶¶ 8, 11, 15-16. In four of her enumerated counts, she articulated her claims as follows. In Counts 9 and 12, entitled "Wrongful Discharge in Violation of Public Policy," she alleged that she was terminated in retaliation for allegedly complaining about Defendants' 401k plan. In Counts 3 and 4, entitled "Retaliation," she alleged that she was terminated in retaliation for allegedly complaining about "violations of federal ERISA regulations and other employment violations." Id., ¶¶ 24, 27.

Defendants filed a motion to dismiss the Complaint in its entirety. They argued that Counts 9 and 12, which related to the 401k plan, were preempted by ERISA. With respect to the ambiguous Counts 3 and 4, Defendants argued that to the extent Plaintiff was asserting that she was terminated in retaliation for complaining about the alleged 401k plan irregularities, Counts 3 and 4 were preempted by ERISA (i.e., they were duplicative of Counts 9 and 12). Or, they argued, to the extent Plaintiff was asserting that she was terminated in retaliation for complaining about sexual harassment, Counts 3 and 4 were preempted by, and thus Plaintiff must be asserting her claims under, Chapter 151B. See Memo. in Supt. of Defs.' Mot. to Dismiss (June 27, 2003) at 6-8.

In her Opposition, Plaintiff essentially conceded that to the extent Counts 3 and 4 alleged **retaliatory termination** based on complaints about the 401k plan, they were duplicative of Counts 9 and 12, in which she alleged **wrongful termination** based on complaints about the 401k plan. See Pl. Opp. to Defs.' Mot. to Dismiss (Aug. 11, 2003), at 9-10 (arguing in section III A of her brief that, to the extent Counts 3 and 4 allege retaliatory termination based on complaints about the 401k plan, the counts were not preempted by ERISA); id. at 14 (arguing

2

that Counts 9 and 12, alleging wrongful termination based on complaints about the 401k plan, were not preempted by ERISA, and citing no cases except to say "See supra section III A (explaining Massachusetts's ERISA-preemption jurisprudence)"). Plaintiff's concession was only logical, since a horse by any other name is still a horse. A claim for "retaliatory discharge" brought under the common law is just another name for "wrongful discharge" in violation of public policy brought under the common law. See, e.g., King v. Driscoll, 418 Mass. 576, 582 (1994) ("whether retaliatory discharge [brought not under any statute but under the common law] violates public policy [is a] question of law for the judge").

Judge Gary Nickerson allowed the Defendants' motion to dismiss Counts 9 and 12, saying: *"Insofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by [ERISA]."* Order dated Apr. 26, 2004 (Exhibit B) at 2 (emphasis added). He did not rule on the Defendants' motion to dismiss Counts 3 and 4, thereby allowing those claims to proceed. See id.

It is obvious from Judge Nickerson's Order that, to the extent the retaliatory discharge claims (Counts 3 and 4) are based on Plaintiff's alleged complaints about the 401k plan, they are duplicative of the wrongful-discharge claims that Judge Nickerson dismissed (Counts 9 and 12). Such claims obviously constitute an "alleg[ation]" that [Plaintiff] was wrongfully terminated because she reported possible benefit plan violations," and, therefore, they are "preempted by [ERISA]." Id.[1] Judge Nickerson's Order makes clear that the reason he did not dismiss Counts 3 and 4 is that they are actionable only because they are brought under an entirely separate theory: that the Defendants supposedly terminated the Plaintiff for complaining about alleged sexual harassment, in violation of Chapter 151B.

---

[1] During the parties' Superior Court Rule 9C discovery conference on December 10, 2004, Plaintiff's counsel acknowledged that the Court had dismissed all counts in the Complaint related to the Defendants' 401k plan, but stated that he disagreed with the ruling and wanted to "flush out" the issue.

## CONCLUSION

Because Judge Nickerson allowed Plaintiff to pursue her retaliatory discharge claims

(Counts 3 and 4) only to the extent they are based on alleged complaints of sexual harassment,

not alleged complaints about the 401k plan, the 401k plan is no longer an issue in this case.

Therefore, the Defendants respectfully request that the Court quash the subpoenas served on the

auditor (Jed Cohen & Co.) and the third-party administrator (Sergio DeCurtis) of the Defendants'

401k plan, and prohibit any further discovery into the Defendants' 401k plan.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN
STRATEGIES, LLC, and JOHN J. BRADBURY, JR.,

By their attorneys,

Christine J. Wichers (BBO # 631857)
Gretchen Lundgren Edson (BBO # 644742)
Choate, Hall & Stewart
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  February 17, 2005

3829606v1

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON:
2/17/05
CJW

4

# Commonwealth of Massachusetts
## County of Plymouth
## The Superior Court

Civil Docket **PLCV2003-00354**

RE:   Walsh v Healthcare South P.C. et al

TO:   Edward M Swartz, Esquire
      Swartz & Swartz
      10 Marshall Street
      Boston, MA 02108

---

## CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **03/09/2005**:

*RE: Defts' MOTION for reconsideration of the court's February 11, 2005 order denying the defts' motion for protective order; pltff's opposition*

**is as follows:**

**MOTION (P#35) DENIED (Thomas A. Connors, Justice) Notices mailed March 10, 2005**

Dated at Plymouth, Massachusetts this 10th day of March, 2005.

Francis R. Powers,
Clerk of the Courts

BY:

Adam Baler
Assistant Clerk

Telephone: (508) 747-6911

Copies mailed 03/10/2005

RECEIVED
APR 0 8 2005
PLYMOUTH SUPERIOR COURT

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                        )
JOAN WALSH,                             )
                                        )
              Plaintiff,                )      05    10701 RWZ
                                        )
v.                                      )      Civil Action No. _____
                                        )
HEALTHCARE SOUTH, P.C., PHYSICIAN       )
STRATEGIES, LLC, & JOHN J. BRADBURY, JR.,)
                                        )      MAGISTRATE JUDGE Collings
              Defendants.               )
                                        )
```

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1331, 1441 and 1446, the defendants, Healthcare South,

P.C. ("HCS"), Physician Strategies, LLC, and John J. Bradbury, Jr., hereby remove the above-

captioned action from the Plymouth County, Massachusetts Superior Court.

### SUMMARY

Plaintiff filed this action against her former employer (HCS), an affiliated organization,

and the manager who terminated her employment. Among her claims, Plaintiff has alleged that

she was terminated in retaliation for complaining about HCS's 401k plan. Because her

retaliation claims are preempted by the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1132(a), this Court has federal question jurisdiction over them and they are

removable under 28 U.S.C. § 1331. See Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S. Ct.

2488, 2502 (2004) (holding that a state-law claim which is preempted by ERISA is removable to

federal court). This Court has supplemental jurisdiction over the other claims, which are brought

under Massachusetts state law. 28 U.S.C. § 1367.

foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☐ electronically filed original filed on_____
☑ original filed in my office on 9-8-05
Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By: _____
Deputy Clerk

## RELEVANT FACTS AND LAW

1.     Plaintiff worked in Human Resources for HCS, a network of pediatric and family practice physicians based in Pembroke, Massachusetts.

2.     After the Defendants terminated her employment, Plaintiff filed a complaint with the MCAD, alleging that she had been sexually harassed and terminated in retaliation for complaining about alleged sexual harassment.

3.     Plaintiff removed her case from the MCAD and filed a Complaint in Plymouth Superior Court. In the body of her Complaint, she alleged that she had been terminated both for reporting alleged sexual harassment and for reporting alleged violations of HCS's 401k plan.

4.     The Complaint contained twelve counts. Specifically, Plaintiff sued all three defendants for sex discrimination and sexual harassment in violation of Mass. Gen. Laws ch. 151B (Counts I and II); retaliation in violation of an unidentified law (Counts III and IV); intentional and negligent infliction of emotional distress (Counts VII, VIII, X, and XI); and wrongful termination in violation of an unidentified Massachusetts public policy (Counts IX and XII). Plaintiff also sued the individual defendant, her former supervisor, for intentional interference with business and/or contractual relations (Counts V and VI).

5.     Defendants moved to dismiss the entire Complaint for failure to state a claim. Of relevance here, the Defendants argued that the retaliation claims (Counts III-IV) and the wrongful termination claims (Counts IX-X) were both preempted by Mass. Gen. Laws Chapter 151B because, although the Complaint was muddled, Plaintiff appeared to allege in those claims that she had been terminated for reporting alleged sexual harassment.

2

6. The Defendants argued, in the alternative, that to the extent the retaliation and/or wrongful termination claims were based on an allegation that Plaintiff had been terminated for reporting alleged violations of her employer's 401k plan, the claims were preempted by ERISA.

7. The Superior Court allowed the Defendants' motion in part, dismissing the wrongful termination claims against all the Defendants and the emotional distress claims against the corporate Defendants. Of relevance here, the Court dismissed the wrongful termination claims (Counts IX and XII) on the following grounds: "Insofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by the Employee Retirement Income Security Act." Order dated Apr. 26, 2004 (copy attached as Exhibit A) at 2.

8. The Court "ma[de] no ruling as to" the other counts, including the retaliation claims (Counts III-IV). Id. However, the Defendants understood that the Superior Court was allowing the retaliation claims to proceed only under MGL Chapter 151B on Plaintiff's theory that she had been terminated in retaliation for complaining about alleged sexual harassment. The Defendants understood the Court's language about ERISA preemption to bar the Plaintiff from pursuing her retaliation claims under the theory that she had been terminated because she had reported possible violations of HCS's 401k plan, to the extent she was even asserting that theory.

9. Thereafter, Plaintiff sought discovery into HCS's 401k plan. The Defendants moved for a protective order on the grounds that all claims relating to the 401k plan had been dismissed. The Superior Court denied the motion. The Defendants then filed a motion for reconsideration, which was denied on March 10, 2005.

10. It was not until March 10, 2005 that the Defendants first understood that Plaintiff has been permitted to pursue a claim for termination in retaliation for complaining about HCS's

3

401k plan. Because Defendants contend any such claim is preempted by ERISA, it was not until March 10, 2005 that the Defendants first ascertained that this case is removable. See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S. Ct. 2488, 2502 (2004).

11.     Defendants have timely filed this Notice of Removal within 30 days after first ascertaining that this case is removable. See 28 U.S.C. § 1446(b) ("notice of removal . . . shall be filed within thirty days after the receipt by the defendant . . . of a copy of an . . . order . . . from which it may first be ascertained that the case is one which is or has become removable"); e.g., Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 205-06 (2d Cir. 2001) (a case becomes removable only when it can be "intelligently ascertained" that grounds for removal exist).

12.     In accordance with 28 U.S.C. § 1446(a), all state court process, pleadings and orders are attached hereto at Tab 1.

13.     In accordance with Local Rule 81.1(a), Defendants will file certified or attested copies of all records and proceedings in the state court action and a certified or attested copy of all docket entries therein, including a copy of this Notice of Removal, with this Court within thirty days after filing this Notice.

14.     In accordance with 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, Defendants will give written notice thereof to Plaintiff and will file a copy of such notice with the Plymouth Superior Court.

WHEREFORE, the Defendants respectfully request that this action be removed from the Plymouth Superior Court to the United States District Court for the District of Massachusetts.

4

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN
STRATEGIES, LLC, and JOHN J. BRADBURY, JR.,

By their attorneys,

Christine J. Withers (BBO # 631857)
Gretchen Lundgren Edson (BBO # 644742)
CHOATE, HALL & STEWART LLP
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: April 8, 2005

3905217v2

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 4·8·05

A TRUE COPY ATTEST

CLERK

5

*Swartz & Swartz*

ATTORNEYS AT LAW

*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900    •    FAX · 617-367-7193

April 12, 2005

**VIA FACSIMILE**

Christine Wichers, Esq.
Gretchen Edson, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109

      **Re:**    **Walsh v. Healthcare South, P.C. et al**
              **Civil Docket No.: 03-0354B**

Dear Attorney Wichers:

      I am in receipt of your notice of removal in the Walsh matter. It is our opinion your late removal has been filed to circumvent the orders of the Superior Court, improperly delay discovery and in violation of applicable Federal removal statutes. Your claim that you recently became aware of your right of removal is ludicrous and frivolous. I will give you seven days to voluntarily remand this case to Superior Court. If it is not voluntarily remanded we will file a motion for remand and sanctions for you blatant attempt to forum shop. We will seek attorney's fees and costs along with any other reprimand the court deems appropriate against your clients. Your clients have repeatedly made the same arguments into their motions to dismiss and discovery motions to no avail. You cannot continue to forum shop for a different judge in Federal Court to repeat the same arguments you already made and lost. It is quite obvious what you are attempting to do and it is wrong and in violation of our Federal Rules of Civil Procedure. You have until April 19, 2005 to remand this case.

                    Very truly yours,

                    David P. Angueira

DPA:kjb
Enclosures

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|-----|----------|------|--------|
| 831 | 17 | APR. 12 | 14:52 | 01/10 | 2 | (617) 248-4000 | | EC | M  OK |



*Swartz & Swartz*
ATTORNEYS AT LAW
*The John & Ebenezer Hancock House on The Freedom Trail*
NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108
617-742-1900    ·    FAX · 617-367-7193

## FACSIMILE COVER SHEET

DATE:               April 12, 2005

TO:                 Christine Wichers, Esq.

AT:                 Choate, Hall & Stewart

TELECOPY NO.:       (617) 248-4000

FROM:               David P. Angueira, Esq.

PAGES TO FOLLOW:    1

**IF YOU HAVE ANY PROBLEMS WITH THE TRANSMISSION OF THIS FAX, CONTACT KACY at 617-742-1900**

**COPY TO FOLLOW:     NO**

**OUR FAX NO. (617) 367-7193**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: The document(s) accompanying this fax contain confidential information which is legally privileged. The information is intended only for the use of the intended recipient named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information except its direct delivery to the intended recipient named above is strictly prohibited. If you have received this fax in error, please notify us immediately by telephone to arrange for the return of the original documents to us.



*Swartz & Swartz*

ATTORNEYS AT LAW

*The John & Ebenezer Hancock House on The Freedom Trail*

NUMBER TEN MARSHALL ST., BOSTON, MASSACHUSETTS 02108

617-742-1900    •    FAX · 617-367-7193

## FACSIMILE COVER SHEET

DATE:                       April 12, 2005

TO:                         Christine Wichers, Esq.

AT:                         Choate, Hall & Stewart

TELECOPY NO.:               (617) 248-4000

FROM:                       David P. Angueira, Esq.

PAGES TO FOLLOW:            1

## IF YOU HAVE ANY PROBLEMS WITH THE TRANSMISSION OF THIS FAX, CONTACT KACY at 617-742-1900

## COPY TO FOLLOW:        NO

## OUR FAX NO. (617) 367-7193

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: The document(s) accompanying this fax contain confidential information which is legally privileged. The information is intended only for the use of the intended recipient named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information except its direct delivery to the intended recipient named above is strictly prohibited. If you have received this fax in error, please notify us immediately by telephone to arrange for the return of the original documents to us.