UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| **JOAN WALSH,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HEALTHCARE SOUTH, P.C., PHYSICIAN** | ) | |
| **STRATEGIES, LLC AND JOHN J.** | ) | **C.A. NO.: 05-10701-RWZ** |
| **BRADBURY, Jr.,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND FOR SANCTIONS

### I.    INTRODUCTION

The defendants, Healthcare South, P.C., Physician Strategies, LLC and John J. Bradbury (collectively the "Defendants"), hereby oppose the Plaintiff's Motion to Remand and for Sanctions. The primary grounds for the Defendants' opposition are the following:

(1)    the Plaintiff's purported "state law" retaliation claim is premised upon her complaints about the Defendants' 401k plan. As such, Plaintiff's claim is pre-empted by ERISA and within the exclusive jurisdiction of this Court;

(2)    the Defendants were unable to ascertain that this case was removable until March of 2005, on account of the Plaintiff's muddled pleadings and unclear state court rulings which appeared to have dismissed Plaintiff's ERISA-related claims;

(3)    upon realizing that the Superior Court had not dismissed all ERISA-

related claims, the Defendants promptly removed this action; and

4)    because this Court has exclusive jurisdiction over ERISA-related claims,

the Defendants' removal was proper and this Court should exercise jurisdiction over this

action.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2003, the Plaintiff filed a twelve-count Complaint in the Plymouth

Superior Court (the "Superior Court"). See Complaint, attached as Exhibit A.  Contrary to

the Plaintiff's position in her Motion to Remand, not "all counts raised violations of state

law."[1]  Specifically, Count III, paragraph 24,  reads, in pertinent part, as follows:

### Retaliation Against Defendant Healthcare South, P.C. and/or Physician Strategies, LLC[2]

24.    Following the Plaintiff's disclosure to the Defendant of its violations of
federal ERISA regulations and other employment violations, Defendant
Healthcare South, P.C. and/or Physician Strategies, LLC negligently,
deliberately and purposefully retaliated against Plaintiff Joan Walsh as
follows:

a.    Verbal abuse of the Plaintiff by their agent, John J. Bradbury, Jr.
b.    Physical and verbal intimidation of the Plaintiff by
John J. Bradbury, Jr.;
c.    Public humiliation of the Plaintiff by John J. Bradbury, Jr.; and
d.    Termination of the Plaintiff's employment.

---

[1] On May 12, 2005, soon after their retention, defense counsel met with Plaintiff's counsel to discuss the case. During that meeting, Plaintiff's counsel stated that his client's retaliation claims were based upon M.G.L. c. 151B and not ERISA. There is no mention of Chapter 151B in either of the Plaintiff's retaliation counts, although the Complaint does reference "other employment violations," which are unidentified. Plaintiff's counsel contends that his client may bring an ERISA-retaliation claim under Chapter 151B. This is incorrect because Chapter 151B does not countenance ERISA-related retaliation claims. See M.G.L. c. 151B, §4. Plaintiff is attempting to use Chapter 151B as a vehicle for her federal claims.
[2] Count IV of the Plaintiff's Complaint contains the same allegations against Defendant John J. Bradbury, Jr.

2

On June 27, 2003, the Defendants moved to dismiss the Plaintiff's complaint in its entirety. See Motion to Dismiss and Memorandum in Support, attached collectively as Exhibit B. With respect to Counts III and IV, the basis of the Defendants' motion was two fold: First, the Plaintiff's so-called ERISA retaliation claims must be dismissed because, to the extent the Plaintiff alleges she was subject to retaliation for reporting violations of the corporate Defendants' retirement plan, her claims are pre-empted by ERISA.[3] Second, the Plaintiff's common law retaliation claims relating to discrimination issues (styled by Plaintiff as "other employment issues") were barred by the exclusive remedy afforded by Chapter 151B. The Defendants made the same arguments with respect to Counts IX and XII, which alleged wrongful discharge in violation of public policy.[4]

In response to the Defendants' motion, the Plaintiff argued that her retaliation claim was not pre-empted by ERISA, even though it was based on her alleged complaints to the Defendants' about the 401k plan.[5] Plaintiff also argued that her discrimination related claims were cognizable under Chapter 151B. It should be noted that Plaintiff did not cite to Chapter 151B in her opposition to the Motion to Dismiss, but did cite a case which discussed retaliation under Chapter 151B. See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Complaint, attached as Exhibit C. Even in her lengthy (18 page) Opposition, Plaintiff failed to specify the precise basis for her state law retaliation claim. Thus, the Plaintiff articulated two discrete claims; one based upon

---

[4] Counts IX and XII do not contain the same references to ERISA that appear in Counts III and IV.

[5] In support of its argument, the Plaintiff relied upon a single state case, Pace v. Signal Tech. Corp., 417 Mass. 154 (1994). The Pace case fails to support the Plaintiff's position that her ERISA-related retaliation claim is not pre-empted. This Court has previously noted that Pace lacks controlling authority. See Paradise v. Benefit Plans Committee. et. al., 1995 U.S. Dist. LEXIS 18091 (1995).

3

retaliation for her discrimination complaints about Defendant Bradbury and one based upon her complaints to the Defendants about possible ERISA violations.

On April 26, 2004, the Superior Court issued an Order on the Defendants' Motion to Dismiss. See Order dated April 26, 2004 attached as Exhibit D. With respect to the counts that alleged wrongful discharge in violation of public policy (Counts IX and XII), the Court dismissed both counts and specifically stated that "[i]nsofar as the plaintiff alleges she was wrongfully terminated because she reported possible benefit plan violations, such a claim would be preempted by the Employee Retirement Income Security Act." The Defendants believed that the Superior Court's holding about ERISA pre-emption barred the Plaintiff from pursuing her ERISA-related retaliation claims contained in Counts III and IV. Unfortunately, however, while simultaneously holding that the ERISA-related claims were pre-empted, the Superior Court did not dismiss the retaliation claims. This is because Plaintiff had explained that the "other employment issues" referenced in Counts III and IV arose under Chapter 151B. Defendants quite reasonably concluded that the ERISA-related components of Counts III and IV were no longer extant and that Plaintiff was left with a Chapter 151B retaliation claim.[6]

The situation changed, however, when the Plaintiff issued deposition subpoenas to the individual and company that performed retirement plan audits for the corporate Defendants. This discovery was clearly sought in furtherance of Plaintiff's ERISA-related retaliation claims because no other count remaining in the Complaint arguably relates to ERISA. On December 15, 2004, the Defendants moved for a protective order and to quash the subpoenas. The basis of the Defendants' motion was that the retaliation claims

---

[6] Plaintiff's Chapter 151B retaliation claims are also fatally flawed but Defendants need not address this issue at this time.

4

embodied in Counts III and IV had been dismissed by the Superior Court due to ERISA pre-emption. As such, the discovery sought was irrelevant to any of the Plaintiff's remaining claims. The Superior Court denied the motion without comment. The Defendants filed a motion for reconsideration, which was also denied, again without comment, on March 10, 2005. It was not until that time that the Defendants first understood that the Superior Court was permitting Plaintiff to pursue a state law retaliation claim relating to ERISA. Because such claims are clearly pre-empted by ERISA, it was not until March 10, 2005 that the Defendants first ascertained that this case was removable. Accordingly, the Defendants filed a timely notice of removal on April 8, 2005.

## ARGUMENT

## I.    The Plaintiff's Purported "State" Law Retaliation Claims are Pre-empted by ERISA.

The Plaintiff alleges that, among other things, she was terminated upon her disclosure to the Defendants of their alleged ERISA violations. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Ingersoll-Rand v. McClendon, 498 U.S. 133, 137 (1990), quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). In promulgating this comprehensive statute, Congress included a broadly worded pre-emption provision as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section (1003) b of this title.
> See 29 U.S.C. § 1144(a).

5

The United States Supreme Court has held that "the pre-emption clause is conspicuous for its breath." FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). Its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.'" Ingersoll-Rand Co., 498 U.S. at 138 (citations omitted).

The key to the ERISA pre-emption clause is found in the words "relate to." Id. "Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA." Id., quoting Shaw, 463 U.S. at 90. "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 96-97. Applying the interpretation urged by the Supreme Court results in the inexorable conclusion that the Plaintiff's retaliation claim 'relates to' an ERISA plan. Indeed, the Complaint specifically references the corporate Defendants' ERISA plan. See Complaint, ¶¶ 24 and 27.

Section 510 of ERISA contains a retaliation provision that states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . ." Any "inquiry or proceeding" includes purely internal proceedings such as inquiries made to supervisory or executive level employees. See Nicolaou v. Horizon Media Inc., 402 F.3d 325, 328-29 (2nd Cir. 2005).

There is ample precedent for the Defendants' position that wrongful and retaliatory discharge claims such as the Plaintiff's are pre-empted. See e.g., Anderson v. Electronic Data Systems Corp., 11 F.3d 1311 (5th Cir. 1994) (plaintiff, a former management level employee with ERISA plan responsibilities, alleged discharge for his

refusal to commit certain illegal acts in violation of ERISA); <u>Authier v. Ginsberg</u>, 757

F.2d 796 (6th Cir. 1985) (plaintiff, a former accountant for defendant, alleged discharge

for voicing concerns about defendant's profit-sharing plan); <u>Orci v. Insituform East, Inc.</u>,

901 F. Supp. 978 (D. Md. 1995) (plaintiff, a former administrator of defendant's ERISA

plan, alleged discharge for refusing to commit ERISA violation); <u>Andrews v. Alaska</u>

<u>Operating Engineers-Employers Training Trust Fund</u>, 871 P.2d 1142 (1994) (plaintiff, a

former administrative manager of ERISA trust fund, alleged wrongful discharge based

upon reporting possible misuse of funds in violation of ERISA); <u>Fairneny v. Savrogan</u>

<u>Co.</u>, 422 Mass. 469 (1996) (plaintiffs were former fiduciaries of defendant's ERISA plan,

alleged retaliatory discharge for confronting co-fiduciary about misconduct in connection

with the plan).

These cases hold that claims like those brought by the Plaintiff "relate to" an

employee benefit plan because such claims: (1) depend on the existence of an ERISA

plan; (2) would involve at least some inquiry at trial into the character and extent of duties

imposed by ERISA; and (3) would introduce inconsistency into the administration of

ERISA plans because not all of the states recognize, or treat uniformly, retaliatory

discharge claims. <u>See</u> <u>Fairneny</u>, 422 Mass. at 473. In each of these cases, the plaintiffs

alleged wrongful and/or retaliatory discharge.

For example, in <u>Authier</u>, a case with facts which are almost identical to the

instant case, the court took an aggressive approach to the pre-emption issue. The court

held that "[c]learly allowing the remedies to an ERISA fiduciary discharged for

complying with ERISA to turn upon the state of his employment and a state court's

interpretation of ERISA's provisions runs contrary to Congress' desire to establish a

7

uniform federal law regulating pension plans." <u>Authier</u>, 757 F.2d at 802 (footnote omitted).

It is clear that the Plaintiff's retaliatory discharge claims, which she alleges arise under state law, are ERISA retaliation claims. The Plaintiff allegedly complained about perceived ERISA violations relating to the corporate Defendants' 401k plan. She alleges that she was terminated in retaliation for voicing her concerns about such violations. Regardless of what label the Plaintiff puts on her "retaliation" claims, they are exclusively federal in nature.

In considering whether to impose federal jurisdiction, the Court must look beyond the label Plaintiff put on her retaliation claim and instead, look to the substance of her claim. "Where a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded." <u>Danca v. Private Health Care Systems, Inc.</u>, 185 F.3d 1, 8 (D. Mass. 1999); <u>see</u> <u>Anderson</u>, 11 F.3d at 1316 (plaintiff's deletion of all references to ERISA in complaint did not circumvent pre-emption of ERISA retaliation claim). This exception to the well-pleaded complaint rule is called "complete preemption." <u>Danca</u>, 185 F.3d at 8 (citations omitted). Thus, the Court should reject the Plaintiff's contention that her claim is brought under Chapter 151B and/or state common law and exercise jurisdiction over this claim as it would any other ERISA-related claim.

## II.    **The Defendants' Removal of this Case Was Timely.**

The Defendants could properly remove this matter within thirty (30) days of their receipt of a copy of an amended pleading, motion, order or other paper from which

8

they first ascertained that the case is removable or has become removable.  See 28 U.S.C.

§ 1446 (b).   Removal under section 1446 is determined by the peculiar facts of each case.

Mill-Bern Associates, Inc. v. Dallas Semiconductor Corp., 69 F. Supp. 2d 240, 242 (D.

Mass. 1999).  "In one case, an expansive interpretation may lead to a conclusion that

removal was timely, while in another case, where the timing and sequence of events is

different, the same expansive interpretation may lead to a conclusion of untimeliness."

Id. (citations omitted).

   This case provides an unusual context for application of the removal statute.  It

consists of muddled pleadings, unclear state court rulings and a Plaintiff who appears to

be using Chapter 151B as a Trojan horse for her ERISA claim.  The Complaint originally

alleged two retaliation counts and two wrongful discharge counts.  The essence of the

claims is the same: that Plaintiff's employment was terminated because she complained

about alleged improprieties in the corporate Defendants' 401k plan administration.

Defendants filed a motion to dismiss all these counts on the basis of ERISA pre-emption.

Plaintiff responded by arguing first, that Counts III and IV were based on Chapter 151B

retaliation for complaints about a hostile work environment; and second, that federal law

did not preempt her ERISA-related claims.

   In fact, Plaintiff continues to contend that Counts III and IV are not pre-empted

by ERISA.  In footnote 3 of Plaintiff's Motion to Remand, Plaintiff asserts that the

Superior Court "recogniz[ed] limits to ERISA pre-emption" by refusing to dismiss these

counts.  Plaintiff appears to assert that she may bring an ERISA-related retaliation claim

under Chapter 151B.  Plaintiff cites no authority for this proposition, which flies in the

face of the explicit language of Chapter 151B.  Plaintiff must show that she engaged in an

9

act or practice protected by Chapter 151B or aided or encouraged others in the exercise of

their Chapter 151B rights.  See M.G.L. c. 151B, §4 (4) and 4 (4A); Wyatt v. City of

Boston, 35 F.3d 13, 15 (1st Cir. 1994); Melnychenko v. 84 Lumber Co., 424 Mass. 285,

295 (1997).  Complaints about ERISA-related issues simply do not suffice.

      Defendants reasonably concluded that the Superior Court's Order on the

Defendants' motion to dismiss was clear in its intent, if not in its language.  The Superior

Court dismissed the ERISA-related claims stating that "[i]nsofar as the plaintiff alleges

she was wrongfully terminated because she reported possible benefit plan violations, such

a claim would be preempted by the Employee Retirement Income Security Act."  The

Superior Court's Order, although not explicitly stated with respect to Counts III and IV,

applies to any retaliation claims relating to ERISA.  Consequently, the Superior Court's

Order was intended to have precisely the result that the Defendants thought; specifically,

the Superior Court declined to exercise jurisdiction over all of the Plaintiff's ERISA

claims.  This left Plaintiff with Chapter 151B retaliation claims in Counts III and IV.

      After the Superior Court dismissed the ERISA-related claims the Plaintiff

attempted to engage in discovery concerning the corporate Defendants' 401k plan by

issuing deposition subpoenas to the 401k plan administrator and auditor.  Because

Defendants' reasonably believed these claims had been dismissed, Defendants moved for

a protective order and to quash the deposition subpoenas.  The Defendants' motion was

denied, without a written decision, as was their motion for reconsideration.  At that time,

and only then, did the Defendants reasonably apprehend that the Superior Court was

allowing Plaintiff to pursue a retaliatory termination claim relating to an ERISA plan.

ID # 431966v01/14487-3/ 05.31.2005

Accordingly, Defendants promptly filed a Notice of Removal well within the thirty (30)

days allowed by Section 1446(b).

Plaintiff also argues that from the time the Defendants filed their Answer, they

"professed actual knowledge" that grounds for removal exist.  In fact, it has consistently

been Defendants' position that this case involved pre-empted ERISA claims.  The

Defendants reasonably believed that the pre-empted claims had been dismissed and there

was no basis to remove the case to federal court.  The Defendants were not aware that the

Superior Court had exercised jurisdiction over pre-empted ERISA claims by allowing

Counts III and IV to proceed.  Defendants reasonably believed that the Superior Court

had found that all ERISA-related claims were pre-empted, thus leaving Plaintiff with a

retaliation claim arising solely under Chapter 151B.  Once the Defendants became aware

of the Superior Court's intent to permit the pre-empted claims to proceed, they wasted no

time in removing this case to federal court.  As such, this Court should conclude that the

Defendants did not, and indeed, could not reasonably ascertain the removable nature of

this action until March 10, 2005, and consequently, this case was removed properly under

Section 1446.

Plaintiff attempts to make much of the fact that Defendants' raised an

affirmative defense of federal pre-emption in their Answer.  This is a specious argument

because it is well settled that federal law defenses, including defensive pre-emption,

cannot form the basis for removal jurisdiction.  See America Policy Holders Ins. Co. v.

Nyacol Products, Inc., 989 F. 2d 1256, 1262 (1st Cir. 1993), cert. denied, 510 U.S. 1040

(1994); New England Explosives Corp. v. Maine Ledge Blasting Specialist, Inc., 542 F.

Supp. 1343, 1346 (D. Me. 1982) (a defense based on federal law does not give rise to

11

federal question jurisdiction). Plaintiff cannot rely upon the Defendants' defensive pre-emption to support her claim that the case was removable merely because Defendants anticipated and were cautious about raising affirmative defenses. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 6-12 (1983). This is particularly true where, as here, the confusion resulted primarily from Plaintiff's muddled Complaint and her claim that the ERISA claim was cognizable under Chapter 151B.

Moreover, filing a pleading, such as an answer which raises a defense which may prove conclusive, does not constitute a waiver of the Defendants' removal rights. See Miami Herald Publishing Co. v. Ferre, 606 F. Supp. 122, 124 (S.D. Fla. 1984) (answer and affirmative defenses); Bedell v. H.R.C. Ltd., 5 22 F. Supp. 732, 738 (E.D. Ky. 1981) (citing Moore's Federal Practice, holding that there is no waiver by defensive action in state court, short of proceeding to an adjudication on the merits).

### III.    The Plaintiff's Request for Sanctions Should be Denied

Plaintiff has requested sanctions for what she characterizes as the Defendants' wrongful conduct. The Court should utilize its discretion in considering the Plaintiff's request and deny the same. The Plaintiff created the problem by drafting a Complaint which was confusing, both to the Plaintiff and perhaps to the Superior Court. Plaintiff persists in creating confusion by attempting to piggyback her ERISA claims onto Chapter 151B.

If the Court remands this case to Superior Court, an award of costs under 29 U.S.C. § 1447(c) is determined by the propriety of the Defendants' removal. Martin v. Franklin Capital Corp., 393 F.3d 1143, 1146-47 (10th Cir. 2004)(citations omitted). Attorney's fees may be denied where the defendant "had a fair basis for removing the

case." Id., quoting Daleske v. Fairfield Cmtys, Inc., 17 F.3d 321, 323 (10th Cir. 1994). In light of the ample precedent for the Defendants' position that the Plaintiff's retaliation claims are pre-empted and the ambiguity in the Complaint and the underlying state court proceedings, the Defendants' had a fair and reasonable basis for removing this case.

## Conclusion

In light of the above, and in consideration of the clear Congressional intent to have uniform adjudication of ERISA-related claims, this Court should deny the Plaintiff's Motion to Remand.

HEALTHCARE SOUTH, P.C., PHYSICIAN STRATEGIES, LLC, AND JOHN J. BRADBURY, Jr.,
By their Attorneys,


/s/ Valerie C. Samuels
Valerie C. Samuels, BBO# 548539
Nancy J. Puleo, BBO# 648457
Posternak, Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199
(617) 973-6100

13

## CERTIFICATE OF SERVICE

I, Valerie C. Samuels, Esq., hereby certify that I served a copy of the within on David P. Angueira, Esq., Swartz & Swartz, 10 Marshall Street, Boston, MA 02108 via electronic and first class mail, postage prepaid on this 31st day of May, 2005.

_____

Valerie C. Samuels, Esq.

14

EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss                                    SUPERIOR COURT
                                               C.A. No.: 03-03548

JOAN WALSH,                          )
                                     )
              Plaintiff,             )    **COMPLAINT AND DEMAND**
                                     )    **FOR JURY TRIAL**
         v.                          )
                                     )
HEALTHCARE SOUTH, P.C., PHYSICIAN )
STRATEGIES, LLC and JOHN J.          )
BRADBURY, Jr.,                       )
                                     )
              Defendants.            )
_____)

## INTRODUCTION

1.      This is an action for damages arising out of the Defendants' conduct in
discriminating against the Plaintiff based on her gender and age, and retaliating against
her when she brought issues of regulatory compliance to the Defendants' attention.

## THE PARTIES

2.      Plaintiff Joan Walsh is an adult individual residing at 4 Sherrill Road, Marshfield,
Plymouth County, Massachusetts and was, at all times relative to this Complaint, an
employee of the Defendants with the title of Human Resources Director.

3.      Defendant Healthcare South, P.C. (hereinafter, HcS) is a professional corporation
consisting of pediatric and family practice physicians with a principle place of business at
18 Columbia Road, Pembroke, Plymouth County, Massachusetts.

4.      Defendant Physician Strategies, LLC (hereinafter, PS) is a physician services
corporation with a principle place of business at 18 Columbia Road, Pembroke, Plymouth
County, Massachusetts.

5.      Defendant John J. Bradbury, Jr. is an adult individual with an office at 18
Columbia Road, Pembroke, Plymouth County, Massachusetts and was, at all times
relative to this Complaint, the Chief Executive Officer of Defendant HcS and the
supervisor of Plaintiff Joan Walsh.

## THE FACTS

6.     Plaintiff Joan Walsh was hired by the Defendants as its first human resources professional on September 25, 1999.  At that time, Defendant HcS had approximately two hundred (200) employees.

7.     In July, 2000, Defendant Bradbury told the Plaintiff she was responsible for the administration of the corporate Defendant's retirement plan, but the authority to administer the plan was retained by the Defendant's Controller.

8.     In the course of her duties, the Plaintiff identified and reported numerous failures by the Defendants to comply with regulations concerning its retirement plan, specifically those of the Department of Labor and the Internal Revenue Service.

9.     On August 24, 2001 the Plaintiff distributed a memorandum to the trustees of the HcS retirement plan, Defendant Bradbury and Controller Ann Marie Richards outlining federal requirements for the plan and stating the need for a signed plan document.

10.    On August 30, 2001, Defendant Bradbury ordered the Plaintiff to refrain from distributing anything further to the trustees and stated that all communications must go through him.  When the Plaintiff reiterated her concerns about the administration of the retirement plan, Defendant Bradbury stated, when the new company was formed (Physician Strategies, LLC) human resources services would not be offered, thereby threatening the Plaintiff's job security and intimidating the Plaintiff.

11.    On September 5, 2001, Plaintiff, in the course of her duties, conducted a meeting with the office managers of the physicians who comprise the Defendant Corporation regarding matters related to the retirement plan.  While the meeting was in progress, Defendant Bradbury entered the Plaintiff's office, demanded the meeting be ended and angrily ordered the Plaintiff to his office.  Fearing for her safety, Plaintiff asked a peer to accompany her to the Defendant's office, where the Defendant told her she was not to address the office managers unless he was present.  The Plaintiff asked the Defendant to reassign her retirement plan duties as she could not condone the violations she knew were occurring, and which may cause the plan to be disqualified in violation of existing laws.

12.    Thereafter, Defendant Bradbury began a campaign of sexual discrimination, abuse, intimidation and retaliation of the Plaintiff and of disseminating false and defamatory information about the Plaintiff, creating a hostile and intolerable work environment

13.    On October 10, 2001 Plaintiff met with Gerald B. Katz, M.D., the Defendants' Treasurer and Board Member regarding his potential fiduciary liability for the company's compliance issues.  Plaintiff described the hostile and abusive working

2

environment created by Defendant Bradbury. Dr. Katz recommended the Plaintiff discuss that issue with David Morin, M.D., the Defendant's Medical Director.

14.    On October 11, 2001 the Plaintiff met with Defendant Bradbury, who told her she had no authority to enforce human resources policy and that she was not to use her "Director's" title within the organization. The Defendant referred to the office managers as "a bunch of women" and said he would not tolerate the Plaintiff and Billing Manager, also a woman, having a director's title.

15.    On October 31, 2001, Plaintiff met with Dr. Morin pursuant to the Defendants' Employee Handbook Open Door policy and problem resolution policies. Plaintiff reminded Dr. Morin of the Defendant's harassment policy and advised him of the abusive, hostile and retaliatiry behavior of Defendant Bradbury and his harassment of her. Dr. Morin informed the Plaintiff that Defendant Bradbury had told him he believed the Plaintiff intended to turn the company in to the EEOC. Dr. Morin agreed with the Plaintiff that Defendant Bradbury did not show respect for professional women. Dr. Morin told the Plaintiff she was the human resources for the Defendants and all would be fine.

16.    The Plaintiff was wrongfully terminated by the Defendants on November 28, 2001 in retaliation for her efforts to expose improper and illegal business practices.

### COUNT I
### Sexual Discrimination Against Defendants
### Healthcare South, P.C. and/or Physician Strategies, LLC

17.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 16 above as of fully and completely set forth herein.

18.    Defendants Healthcare South, P.C. and/or Physician Strategies, LLC negligently, deliberately and purposefully and discriminated against the Plaintiff as follows:

    a.    Verbal abuse of the Plaintiff by their agent, John J Bradbury, Jr. based on the Plaintiff's gender;

    b.    Physical and verbal intimidation of the Plaintiff by John Bradbury, Jr.;

    c.    Public humiliation of the Plaintiff by John Bradbury, Jr.;

    d.    Wrongful termination of the Plaintiff's employment.

19.    As a direct and proximate result of the wrongful conduct described herein, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, concern about her employment and future

3

employability, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendants Healthcare South, P.C. and/or Physician Strategies, LLC, in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT II
### Sexual Discrimination Against Defendant John J. Bradbury, Jr.

20.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 19 above as if fully and completely set forth herein.

21.    Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully and discriminated against the Plaintiff as follows:

    a.    Verbal abuse of the Plaintiff based on the Plaintiff's gender;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Wrongful termination of the Plaintiff's employment.

22.    As a direct and proximate result of the wrongful conduct described herein, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, concern about her employment and future employability, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT III
### Retailation Against Defendant Healthcare South, P.C.
### And/or Physician Strategies, LLC

23.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 22 above as if fully and completely set forth herein.

24.    Following the Plaintiff's disclosure to the Defendant of its violations of federal ERISA regulations and other employment violations, Defendant Healthcare

South, P. C. and/or Physician Strategies, LLC negligently, deliberately and purposefully retaliated against Plaintiff Joan Walsh as follows:

    a.      Verbal abuse of the Plaintiff by their agent, John J. Bradbury, Jr.;

    b.      Physical and verbal intimidation of the Plaintiff by John J Bradbury, Jr.;

    c.      Public humiliation of the Plaintiff by John J. Bradbury, Jr.;

    d.      Termination of the Plaintiff's employment.

25.    As a direct and proximate result of the retaliation against the Plaintiff and the termination of her employment as hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

    WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant Healthcare South, P.C., and/or Physician Strategies, LLC in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT IV
### Retailation Against Defendant John J. Bradbury, Jr.

26.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 25 above as if fully and completely set forth herein.

27.    Following the Plaintiff's disclosure to the Defendants of its violations of federal ERISA regulations and other employment violations, Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully retaliated against Plaintiff Joan Walsh as follows:

    a.      Verbal abuse of the Plaintiff;

    b.      Physical and verbal intimidation of the Plaintiff;

    c.      Public humiliation of the Plaintiff;

    d.      Termination of the Plaintiff's employment.

28.    As a direct and proximate result of the retaliation against the Plaintiff and the termination of her employment as hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of

earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant Jack Bradbury in an amount just and proper, together with punitive triple damages, attorney fees, interest and costs.

## COUNT V
### Intentional Interference With An Advantageous Business Relationship by Defendant John J. Bradbury, Jr.

29.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 28 above as if fully and completely set forth herein.

30.    Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully interfered with the advantageous business relationship between the Plaintiff and her employer, Defendants Healthcare South, P.C. and/or Physician Strategies, LLC as follows:

   a.      Verbal abuse of the Plaintiff;

   b.      Physical and verbal intimidation of the Plaintiff;

   c.      Public humiliation of the Plaintiff;

   d.      Disseminating false and misleading information about the Plaintiff to her employer;

   e.      Termination of the Plaintiff's employment.

31.    As a direct and proximate result of the allegations hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with attorney fees, interest and costs.

## COUNT VI
### Intentional Interference With A Contractual Relationship by Defendant John J. Bradbury, Jr.

32.    Plaintiff Joan Walsh repeats and restates the allegations in paragraphs 1 through 31 above as if fully and completely set forth herein.

33.    Defendant John J. Bradbury, Jr. negligently, deliberately and purposefully interfered with a contractual relationship between the Plaintiff and her employer, Defendants Healthcare South, P.C. and/or Physician Strategies, LLC as follows:

    a.    Verbal abuse of the Plaintiff;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Disseminating false and misleading information about the Plaintiff to her employer;

    e.    Termination of the Plaintiff's employment.

34.    As a direct and proximate result of the allegations hereinabove described, Plaintiff Joan Walsh has suffered extreme mental anguish, outrage, severe physical and emotional anxiety, emotional distress, loss of her employment, loss of earnings, loss of earning capacity, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

    WHEREFORE, Plaintiff Joan Walsh demands judgment against Defendant John J. Bradbury, Jr. in an amount just and proper, together with attorney fees, interest and costs.

## COUNT VII
### Negligent Infliction of Emotional Distress Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

35.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 34 above as if fully and completely set forth herein.

36.    As a result of the actions of the Defendants as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

    WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendants in an amount just and proper together with attorney fees, interest and costs.

## COUNT VIII
### Intentional Infliction of Emotional Distress Against
### Defendant Healthcare South, PC and/or Physician Strategies, LLC

37.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 36 above as if fully and completely set forth herein.

38.    As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## COUNT IX
### Wrongful Discharge In Violation of Public Policy Against Defendant Healthcare South, PC and/or Physician Strategies, LLC

39.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 38 above as if fully and completely set forth herein.

40.    Defendants Healthcare South, P.C. and/or Physician Strategies, LLC wrongfully discharged the Plaintiff in violation of public policy as follows:

    a.    Verbal abuse of the Plaintiff;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Disseminating false and misleading information about the Plaintiff to her employer;

    e.    Termination of the Plaintiff's employment.

41.    As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff Joan Walsh has been caused to suffer humiliation, embarrassment, loss of her employment, loss of earnings, loss of earning capacity and damage to her reputation and standing in the community.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendants in an amount just and proper together with attorney fees, interest and costs.

## COUNT X
### Negligent Infliction of Emotional Distress Against Defendant John J. Bradbury, Jr

42.    Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 41 above as if fully and completely set forth herein.

43.  As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## COUNT XI
### Intentional Infliction of Emotional Distress
### Against Defendant John J. Bradbury, Jr

44.  Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 43 above as if fully and completely set forth herein.

45.  As a result of the actions of the Defendant as hereinaforesaid, Plaintiff Joan Walsh has suffered grievous injury, including, but not limited to emotional distress with physical manifestations.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## COUNT XII
### Wrongful Discharge In Violation of Public Policy
### Against Defendant John J. Bradbury, Jr

46.  Plaintiff Joan Walsh hereby repeats and restates the allegations in paragraphs 1 through 45 above as if fully and completely set forth herein.

47.  Defendants John J. Bradbury, Jr. wrongfully discharged the Plaintiff in violation of public policy as follows:

    a.    Verbal abuse of the Plaintiff;

    b.    Physical and verbal intimidation of the Plaintiff;

    c.    Public humiliation of the Plaintiff;

    d.    Disseminating false and misleading information about the Plaintiff to her employer;

    e.    Termination of the Plaintiff's employment.

48.  As a direct and proximate result of the wrongful acts of the Defendant John J. Bradbury, Jr., Plaintiff Joan Walsh has been caused to suffer humiliation, embarrassment, loss of her employment, loss of earnings, loss of earning capacity and damage to her reputation and standing in the community.

WHEREFORE, Plaintiff Joan Walsh demands judgment against the Defendant in an amount just and proper together with attorney fees, interest and costs.

## PLAINTIFF DEMANDS TRIAL BY JURY

Dated: March _24_, 2003

The Plaintiff
By Her Attorneys

Edward M. Swartz, BBO# 489540
David P. Angueira, BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, Massachusetts  02108
(617) 742-1900

10

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                                    SUPERIOR COURT

|  |  |
|---|---|
| JOAN WALSH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 03-0354B |
| ) | |
| v. ) | |
| ) | |
| HEALTHCARE SOUTH, P.C., PHYSICIAN ) | |
| STRATEGIES, LLC and JOHN BRADBURY, JR., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY

The Defendants move to dismiss all twelve counts in the Complaint with prejudice for failure to state a claim. See MRCP 12(b)(6). As grounds for this motion, the Defendants state as follows:

Plaintiff was employed by defendant Healthcare South, P.C. (the "Company") as a human resources professional and was supervised by defendant Jack Bradbury. After Plaintiff made internal reports about unidentified "failures by the Defendants to comply with regulations concerning its retirement plan," Mr. Bradbury took the following actions: he (1) insisted that all further communications to the plan trustees go through him; (2) told Plaintiff that when the new company was formed, human resources services would not be offered; (3) insisted on being present at any meetings Plaintiff held with the Company's office managers; and (4) told Plaintiff not to use the title "Director." Mr. Bradbury also "began a campaign of sexual discrimination, abuse, intimidation, and retaliation" by engaging in unidentified actions, and began

"disseminating [unidentified] false and defamatory information about the Plaintiff." Plaintiff was subsequently terminated.

Ten of the twelve counts in the Complaint are brought against all three Defendants. Specifically, Plaintiff has sued all the Defendants for gender discrimination, retaliation, intentional and negligent infliction of emotional distress, and wrongful discharge in violation of public policy. Plaintiff has asserted two additional claims against Mr. Bradbury alone: intentional interference with (a) an advantageous business relationship and (b) a contract. For the following reasons, each of these claims fails as a matter of law and should be dismissed with prejudice:

1.     Plaintiff's common-law claims of gender discrimination brought against all three Defendants (Counts I and II) must be dismissed because such claims are barred by the exclusivity provision of MGL ch. 151B. Although Plaintiff could be permitted to amend her complaint to identify a statutory basis for her claims, and Defendants request this under Rule 12(e) as an alternative, it should be noted that any amendment would be fruitless. That is so because Plaintiff has admitted she was not terminated because of her gender, and because the Defendants' alleged sexual comments/conduct are not sufficiently severe or pervasive to rise to the level of actionable sexual harassment as a matter of law. Therefore, even if Plaintiff had properly stated Counts I and II under an employment discrimination statute, those counts would still have to be dismissed for failure to state a claim.

2.     Plaintiff's common-law claims of retaliation brought against all three Defendants (Counts III and IV) must be dismissed because, to the extent Plaintiff alleges she was retaliated against for reporting violations of the Company's retirement plan, her claims are barred by ERISA, and, to the extent she contends she was retaliated against for reporting alleged sex

discrimination, her claims are barred by the exclusivity provision of MGL ch. 151B. With respect to the latter category, although Plaintiff could be permitted to amend her complaint to identify a statutory basis for her claims, and Defendants request this under Rule 12(e) as an alternative, it should be noted that any amendment to the retaliation claim against Mr. Bradbury (Count IV) would be fruitless. That is so because Plaintiff has failed to allege that Mr. Bradbury knew of her protected activity. Therefore, even if Plaintiff had properly stated Count IV under an employment discrimination statute, that count would still have to be dismissed for failure to state a claim.

3.     Plaintiff's claims against Mr. Bradbury for intentional interference with an advantageous business relationship or a contract (Count V-VI) fail because they merely restate her alleged discrimination claim. These claims also fail because Plaintiff has not alleged that Mr. Bradbury acted with actual malice.

4.     Plaintiff's claims for intentional and negligent infliction of emotional distress brought against all three Defendants (Counts VII-VIII and X-XI) must be dismissed because they are barred by the Massachusetts Workers' Compensation Act. These claims also fail because Plaintiff has failed to allege "extreme and outrageous" conduct by the Defendants, or that she suffered intolerable distress.

5.     Plaintiff's claims for wrongful discharge in violation of public policy brought against all three Defendants (Counts IX and XII) must be dismissed because, to the extent the public policy invoked by Plaintiff is ERISA, her claims are preempted by ERISA, and, to the extent the public policy she invokes is prohibiting employment discrimination, her claims are barred by the exclusivity provision of MGL ch. 151B.

A supporting Memorandum of Law is filed herewith.

WHEREFORE, Defendants respectfully request that the Court dismiss the entire Complaint with prejudice. In the alternative, Defendants respectfully request that the Court order Plaintiff to provide a more definite statement as to Counts I-IV and that it dismiss the remaining claims (Counts V-XII) with prejudice.

Request for Oral Argument

Pursuant to Superior Court Rule 9A(c), Defendants respectfully request a hearing on this motion.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN STRATEGIES, LLC, and JOHN BRADBURY, JR.,

By their attorneys,

_Tricia A. Rice_

Christine Wichers (BBO No. 631857)
Tricia A. Rice (BBO No. 633556)
Choate, Hall & Stewart
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  June 27, 2003

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND
DATE 6/27/03  SIGNATURE _Tricia Rice_

EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                          SUPERIOR COURT

JOAN WALSH,                          )
                                     )
              Plaintiff,             )
                                     )          Civil Action No. 03-0354B
v.                                   )
                                     )
HEALTHCARE SOUTH, P.C., PHYSICIAN    )
STRATEGIES, LLC and JOHN BRADBURY, JR., )
                                     )
              Defendants.            )
                                     )
                                     )

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY

The Defendants file this Memorandum in support of their Rule 12(b)(6) motion to

dismiss all twelve counts in the Complaint with prejudice for failure to state a claim.

### INTRODUCTION

Plaintiff was employed by defendant Healthcare South, P.C. (the "Company") as a

human resources professional and was supervised by defendant Jack Bradbury. According to the

Complaint, after Plaintiff made internal reports about unidentified "failures by the Defendants to

comply with regulations concerning its retirement plan," Mr. Bradbury took the following

actions: he (1) insisted that all further communications to the plan trustees go through him; (2)

told Plaintiff that the new company being formed would not offer human resources services; (3)

insisted on being present at any meetings Plaintiff held with the Company's office managers; and

(4) told Plaintiff not to use the title "Director." Mr. Bradbury also "began a campaign of sexual

discrimination, abuse, intimidation, and retaliation" by engaging in unidentified actions, and

began "disseminating [unidentified] false and defamatory information about the Plaintiff." Plaintiff was subsequently terminated.

Ten of the twelve counts in the Complaint are brought against all three Defendants. Specifically, Plaintiff has sued all the Defendants for gender discrimination, retaliation, intentional and negligent infliction of emotional distress, and wrongful discharge in violation of public policy. Plaintiff has asserted two additional claims against Mr. Bradbury alone: intentional interference with (a) an advantageous business relationship and (b) a contract. Defendants move to dismiss all twelve of these claims with prejudice pursuant to Rule 12(b)(6).

## FACTUAL ALLEGATIONS

The following allegations in the Complaint are accepted as true solely for purposes of this motion.

The Company is a professional corporation consisting of pediatric and family practice physicians based in Pembroke, Massachusetts. Complaint, ¶ 3. Plaintiff began her employment with the Company in September 1999 as a human resources professional. Id. ¶ 6. She was supervised by Mr. Bradbury, the Company's CEO. Id. ¶ 5. Plaintiff's responsibilities included, among other duties, the administration of the Company's retirement plan. Id. ¶ 7. The ultimate authority to administer the plan was held by the Controller, Ann Marie Richards. Id. ¶¶ 7, 9. During her employment, Plaintiff "identified and reported numerous failures by the Defendants to comply with regulations concerning its retirement plan." Id. ¶ 8. The Complaint does not identify the alleged failures.

In August 2001, Plaintiff distributed a memorandum to the plan trustees, Mr. Bradbury, and Ms. Richards, outlining federal requirements for the plan and stating that a signed plan document was needed. Id. ¶ 9. Mr. Bradbury later told Plaintiff not to distribute anything else to

2

the trustees, and that all communications had to go through him.  Id. ¶ 10.  Subsequently,

"Plaintiff reiterated her concerns about the administration of the retirement plan."  Id.  Again, the

Complaint does not identify these "concerns."  Mr. Bradbury responded that when "the new

company," defendant Physician Strategies, LLC, was formed, human resources would not be

offered.  Id.

 In September 2001, Plaintiff met with the Company's office managers concerning the

retirement plan.  Id. ¶ 11.  Mr. Bradbury interrupted and ended the meeting, and told Plaintiff she

was not to address the office managers unless he was present.  Id.  Plaintiff asked Mr. Bradbury

to reassign her retirement plan duties.  Id.

 Thereafter, Mr. Bradbury allegedly began "a campaign of sexual discrimination, abuse,

intimidation and retaliation of the Plaintiff."  Id. ¶ 12.  The Complaint, however, does not

identify Mr. Bradbury's actions in this regard.  Supposedly Mr. Bradbury also began

"disseminating false and defamatory information about the Plaintiff."  Id.  The Complaint,

however, does not identify the allegedly defamatory comments.

 In October 2001, Plaintiff met with the Company Treasurer about his potential liability

for the Company's "compliance issues."  Id. ¶ 13.  The Complaint does not identify these alleged

issues.  Plaintiff allegedly "described the hostile and abusive working environment created by"

Mr. Bradbury.  Id.  Again, the Complaint fails to identify what specific actions by Mr. Bradbury

Plaintiff allegedly reported.  The Treasurer recommended Plaintiff speak with the Company's

Medical Director.  Id.

 Plaintiff then met with Mr. Bradbury, who told her she had no authority to enforce human

resources policy and that she and the Billing Manager were not to use the title "Director."  Id. ¶

3

14. Mr. Bradbury also referred to the office managers, all of whom are in fact female, as "a bunch of women." Id.

Three weeks later, Plaintiff met with the Medical Director and reported Mr. Bradbury's "abusive, hostile and retaliatory behavior" and his harassment of the Plaintiff. Id. ¶ 15. Again, the Complaint does not identify the specific actions by Mr. Bradbury that Plaintiff allegedly reported. The Medical Director told Plaintiff that Mr. Bradbury had said he believed Plaintiff would "turn the Company in" to the EEOC. Id. The Medical Director agreed with Plaintiff that Mr. Bradbury "did not show respect for professional women." Id. The Medical Director told Plaintiff "she was the human resources for the Defendants" and all would be fine. Id.

A month later, Plaintiff was terminated "in retaliation for her efforts to expose improper and illegal business practices." Id. ¶ 16.

### ARGUMENT

Defendants move to dismiss all twelve counts in the Complaint for failure to state a claim.

**A.    Plaintiff's Claims for Sex Discrimination (Counts I and II) Fail as a Matter of Law.**

In Counts I and II, Plaintiff purports to state claims for sex discrimination against all three Defendants. In particular, she alleges that Mr. Bradbury verbally abused, physically and verbally intimidated, publicly humiliated, and wrongfully terminated her. Complaint, ¶¶ 18, 21.

Plaintiff has not identified any employment discrimination statute supporting her claims, a fatal deficiency. Because state common-law claims for discrimination are barred by the exclusivity provision of MGL ch. 151B, whose "comprehensive remedial scheme is exclusive," Counts I and II fail as a matter of law and should be dismissed. Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996); accord, e.g., Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) ("G.L. c. 151B provides the exclusive remedy for employment discrimination").

4

The Court could permit Plaintiff to amend her Complaint to identify a statutory basis for her discrimination claims, and Defendants request such an order under Rule 12(e) as an alternative to dismissal under Rule 12(b)(6) on account of Plaintiff's failure to identify a statute. However, it should be noted that any such amendment would be fruitless. That is so because, even if Plaintiff had properly pled Counts I and II under Chapter 151B, they would still fail to state a claim under either a sex discrimination or a sexual harassment theory.

More specifically, to the extent Plaintiff alleges she was terminated because of her gender, her discrimination claims fail as a matter of law because she has admitted that she was terminated "in retaliation for her efforts to expose improper and illegal business practices," and *not* because of her gender. Complaint ¶ 16.

And to the extent Plaintiff alleges she was subjected to sexual harassment, her claims fail because Mr. Bradbury's alleged sexual conduct/comments were not sufficiently severe and pervasive to rise to the level of sexual harassment as a matter of law. See Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2001) (to state a claim for sexual harassment, "the conduct alleged [must be] sufficiently severe and pervasive to interfere with a reasonable person's work performance"). Plaintiff's only factual allegation supporting her claim is that Mr. Bradbury referred to the office managers (accurately) as "a bunch of women." Complaint, ¶ 14. This one stray remark is insufficient to state a claim of sexual harassment as a matter of law. See, e.g., Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 447 n.9 (1995) ("isolated or ambiguous remarks, tending to suggest animus based on [sex], are insufficient, standing alone, to provide an employer's discriminatory intent") (internal quotation omitted); Carlton v. Worcester Sch. Dist., 14 MDLR 1143, 1147 (1992) (a "steady barrage of opprobrious . . . comment[s]" is required to establish unlawful harassment); Daigle v. NECX, Inc., 2001 WL 1199868, at * 4-5

5

(Mass. Super. Ct. 2001) (dismissing sexual harassment claim based on allegation that plaintiff's supervisor made statements about women's body parts, referred to women as "beavers," and said "you girls are too emotional," because "sporadic statements cannot demonstrate the level of pervasiveness and severity necessary to establish a claim of sexual harassment").[1]

Because Counts I and II would still fail to state a claim even if they had been properly pled under an employment discrimination statute, they should be dismissed with prejudice.

**B.      Plaintiff's Claims for Retaliation (Counts III and IV) Fail as a Matter of Law.**

In Counts III and IV, Plaintiff purports to state claims for retaliation against all three Defendants. In particular, she alleges that Mr. Bradbury engaged in the same conduct underlying her discrimination claims (verbal abuse, physical and verbal intimidation, public humiliation, and termination), in retaliation for Plaintiff's disclosure to Defendants of "its violations of federal ERISA regulations and other employment violations." Complaint, ¶¶ 24, 27. Plaintiff has not identified the "other employment violations," but presumably she means the alleged sex discrimination. The two bases of her retaliation claims – ERISA and employment discrimination – will be addressed in turn.

First, to the extent Plaintiff alleges that the Defendants retaliated against her for reporting violations of ERISA, her claims are preempted by ERISA and must be dismissed. See 29 U.S.C. § 1144(a) (ERISA supersedes all state laws relating to employee benefit plans); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990) (ERISA preempted claim that plaintiff was

---

[1] The only other allegation supporting Plaintiff's sexual harassment claim is her conclusory statement that Mr. Bradbury "began a campaign of sexual discrimination, abuse, [and] intimidation," the factual basis of which she has not identified. Complaint, ¶ 12. Plaintiff's unsupported conclusion cannot defeat a motion to dismiss. When ruling on such a motion, a court "do[es] not accept legal conclusions cast in the form of factual allegations." Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). Plaintiff may not "rest on subjective characterizations or conclusory descriptions." Id. at 478 (internal quotations omitted); see, e.g., Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (dismissing complaint based solely on allegations of "garden-variety unfairness," followed by "the self-serving conclusion that the defendant[s] [were] motivated by a discriminatory animus"); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 18 (1st Cir. 1989) (dismissing complaint based solely on "conclusory statements and subjective characterizations of the type regularly found wanting in civil rights cases").

6

wrongfully terminated because of employer's desire to avoid contributing to its pension fund); Fairneny v. Savogran Co., 422 Mass. 469, 472 (1996) (ERISA preempted claim that plaintiff was wrongfully terminated in retaliation for carrying out a fiduciary duty in connection with an ERISA-governed employee benefit plan); McLean v. Carlson Cos., 777 F. Supp. 1480, 1482 (D. Minn. 1991) (ERISA preempted claim that plaintiff was wrongfully terminated for complaining about alleged violations of ERISA-governed plan); McClintick v. Timber Prods. Mfg., Inc., 21 P.3d 328, 333-34 (Wash. Ct. App. 2001) (same); Andrews v. Alaska Operating Eng'rs-Employers Training Trust Fund, 871 P.2d 1142, 1144-48 (Alaska 1994) (same).

Second, to the extent that Plaintiff claims the Defendants retaliated against her for reporting sex discrimination, her claims must be dismissed because they are not actionable under the common law. Claims of retaliation for reporting alleged employment discrimination are actionable under MGL ch. 151B. See, e.g., Sahli v. Bull HN Info. Sys., 437 Mass. 696, 698 (2002). "Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive." Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996). Therefore, because Plaintiff's common-law claims of retaliation (Counts III and IV) are barred by the exclusivity provision of Chapter 151B, they should be dismissed. In the alternative, Plaintiff should be ordered under Rule 12(e) to amend her Complaint by identifying the employment discrimination statute underlying her retaliation claims in Counts III and IV.

With respect to the retaliation claim against Mr. Bradbury (Count IV), it should be noted that any such amendment would be fruitless. That is so because, even if Plaintiff had properly pled Count IV under an employment discrimination statute, she has still failed to state a retaliation claim against Mr. Bradbury because she has not alleged that he knew about her protected activity (i.e., her alleged complaint of sex discrimination). Plaintiff has averred that

7

she reported the alleged sex discrimination to the Company's Medical Director, and that she was

subsequently terminated. See Complaint ¶¶ 15-16. She has *not* alleged, however, that the

Medical Director relayed Plaintiff's complaint to Mr. Bradbury or that Mr. Bradbury somehow

had independent knowledge of Plaintiff's complaint. It is axiomatic that a defendant cannot be

held liable for retaliating against an employee for engaging in protected activity of which the

defendant was unaware. See, e.g., Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir.

2002) (dismissing retaliation claim because plaintiff failed to allege that defendant knew of

plaintiff's protected activity). Because Count IV would still fail to state a claim even if it had

been properly pled under an employment discrimination statute, it should be dismissed with

prejudice.

**C.    Plaintiff's Claims for Intentional Interference With Advantageous Business
Relations and/or Contract (Counts V and VI) Fail as a Matter of Law.**

In Counts V and VI, Plaintiff purports to state claims against Mr. Bradbury of intentional

interference with (1) an advantageous business relationship and (2) a contract. In particular, she

alleges that by engaging in the same conduct underlying her discrimination and retaliation claims

(verbal abuse, physical and verbal intimidation, public humiliation, and termination of the

Plaintiff), and by disseminating unidentified "false and misleading" information about Plaintiff,

Mr. Bradbury intentionally interfered with Plaintiff's relationship with the corporate defendants,

which she describes alternatively as an advantageous business relationship or a contractual

relationship. Complaint, ¶¶ 30, 33.

Plaintiff's intentional interference claims must be dismissed because she has not alleged

any facts to support them beyond the same conclusory allegations she has raised in support of her

sex discrimination claims (Counts I and II). In other words, she has merely recast her

discrimination claims – which, as noted above, are actionable only under an employment

8

discrimination statute – as common-law claims for intentional interference. The courts have

repeatedly made clear that such common-law claims are not cognizable because Chapter 151B is

the exclusive remedy under state law for claims of employment discrimination. See, e.g., Green

v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996) ("Where, as here, c. 151B applies, its

comprehensive remedial scheme is exclusive"); Charland v. Muzi Motors, Inc., 417 Mass. 580,

586 (1994) ("G.L. c. 151B provides the exclusive remedy for employment discrimination");

Bossi v. Town of Billerica, 2001 WL 1660847, at *6 (Mass. Super. Ct. 2001) (intentional

interference claim barred by exclusivity provision of ch. 151B); Dorn v. Astra USA, 975 F.

Supp. 388, 395-96 (D. Mass. 1997) (same). Accordingly, Counts V and VI of the Complaint

must be dismissed.[2]

**D.    Plaintiff's Claims for Intentional and Negligent Infliction of Emotional
       Distress (Counts VII-VIII and X-XI) Fail as a Matter of Law.**

In Counts VII, VIII, X and XI, Plaintiff purports to state claims against all three

Defendants for intentional and negligent infliction of emotional distress. In support of her claims

she has not alleged any additional facts. Instead, she has asserted that, as a result of the

Defendants' previously identified actions, she has "suffered grievous injury, including, but not

limited to emotional distress with physical manifestations." Complaint, ¶¶ 36, 38, 43, 45.

Plaintiff has not identified the alleged physical manifestations.

---

[2] Counts V and VI also must be dismissed because Plaintiff has failed to allege that Mr. Bradbury acted with "actual malice," a requirement for an intentional interference claim. See Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 (2001); Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). Actual malice requires more than personal dislike, uncivil behavior, or derogatory comments. See Alba v. Sampson, 44 Mass. App. Ct. 311, 315-16 (1998); Beriont v. Reichlen, 2000 WL 33170693, at *4 (Mass. Super. Ct. 2000) ("mere utterance of language, even if found to be defamatory" did not rise to level of intentional interference). Plaintiff was required to allege that Mr. Bradbury acted with "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Weber, 434 Mass. at 782. This she has failed to do. All of Mr. Bradbury's alleged actions, such as asking Plaintiff not to distribute materials to the trustees or meet with the office managers without his approval, concerned legitimate interests of the two corporate Defendants.

9

Plaintiff's claims must be dismissed because they are barred by the exclusivity provision of the Massachusetts Worker's Compensation Act (the "Act"), MGL ch. 152, § 24. When an employee suffers personal injuries arising out of and in the course of her employment, the exclusivity provision of the Act prohibits her from asserting tort claims against her employer for injuries compensable under the Act. See Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996). Claims for intentional and negligent infliction of emotional distress are barred under the Act because emotional distress arising from employment is compensable under the Act. See MGL ch. 152, § 1(7A). This is true whether or not the emotional distress arises out of a "bona fide personnel action," Green, 422 Mass. at 560, and irrespective of the "source of the injuries," Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996).

Because Plaintiff's intentional and negligent infliction claims against the corporate Defendants (Counts VII and VIII) are barred by the Act, they must be dismissed. See, e.g., Doe, 422 Mass. at 566 ("the exclusivity provision of the worker's compensation act . . . precludes an action against an employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace"); Green, 422 Mass. at 562 (same); Foley v. Polaroid Corp., 381 Mass. 545, 550 (1980) (affirming dismissal of employee's intentional infliction claim because it was barred by the Act).

In addition, Plaintiff's intentional and negligent infliction claims against Mr. Bradbury (Counts X and XI) must be dismissed because "the complained-of conduct related wholly to his position as [Plaintiff's] supervisor and to the manner in which [he] exercised his supervisory duties." Anzalone v. MBTA, 403 Mass. 119, 125 (1988) (affirming dismissal of intentional infliction claim brought against plaintiff's supervisor because it was barred by the Act); accord, e.g., Mullen v. Ludlow Hosp., 32 Mass. App. Ct. 968, 970 (1992) (same); Beling v. Radiation

10

Monitoring Devices, Inc., 1999 WL 959675, at * 6 (Mass. Super. Ct. 1999) (same, for claim of

negligent infliction); Forti v. MIT, 1995 WL 809498, at *5 (Mass. Super. Ct. 1995) (same).[3]

**E.    Plaintiff's Claims for Wrongful Termination in Violation of
Public Policy (Counts IX and XII) Fail as a Matter of Law.**

In Counts IX and XII, Plaintiff purports to state claims of wrongful termination in

violation of public policy against all three Defendants.  In particular, she alleges that by engaging

in the same conduct underlying all her other claims (verbal abuse, physical and verbal

intimidation, public humiliation, dissemination of false and misleading information, and

termination of the Plaintiff), Mr. Bradbury intentionally interfered with her relationship with the

corporate defendants.  Complaint, ¶¶ 40, 47.

The SJC "consistently has interpreted the public policy exception [to the general rule of

at-will employment] narrowly, reasoning that to do otherwise would convert the general rule into

a rule that requires just cause to terminate an at-will employee." King v. Driscoll, 418 Mass.

576, 582 (1994) (internal quotation omitted).  Plaintiff has not identified the alleged public

policy supporting her claim.  From the face of her Complaint, there are only two possibilities:

---

[3] Even if Plaintiff's intentional infliction claims were not barred by the Act, they would still fail because she has not
alleged "extreme and outrageous" conduct by the Defendants, as is required.  See Agis v. Howard Johnson Co., 371
Mass. 140, 144-45 (1976).  Conduct is sufficiently extreme and outrageous only if it exceeds "all possible bounds of
decency" and is "utterly intolerable in a civilized society." Id.  The Defendants' alleged actions, such as telling
Plaintiff not to meet with the office managers outside Mr. Bradbury's presence, fall far short of this high standard.
Massachusetts courts have denied intentional infliction claims based on facts far more compelling than Plaintiff's
allegations.  See, e.g., Orell v. UMASS Mem. Med. Ctr., Inc., 203 F. Supp. 2d 52, 70 (D. Mass. 2002) (dismissing
intentional infliction claim because defendant's alleged actions – terminating plaintiff's employment based on false
accusations, mischaracterizing her opinions, maliciously defaming her, and discriminating against her based on her
disability – were not sufficiently extreme and outrageous); Delmonte v. Laidlaw Envtl. Servs., Inc., 46 F. Supp. 2d
89, 95-96 (D. Mass. 1999) (rejecting intentional infliction claim because employer's alleged actions – giving
employee a 24-hour ultimatum to resign or be terminated if he married his fiancée, who was working for the
defendant's competitor – were not sufficiently extreme and outrageous).  Plaintiff's claims would also fail because
she has failed to allege that she "suffered distress so severe that no reasonable person could be expected to endure
it." Orell, 203 F. Supp. 2d at 70 (dismissing intentional interference claim) (internal quotation omitted).  She has
alleged only that she suffered "grievous injury"; this is not sufficient.  Cf., e.g., Boyle v. Wenk, 378 Mass. 592, 594
(1979) (plaintiff's distress was so severe that she hemorrhaged).

11

(1) prohibiting violations of ERISA, or (2) prohibiting employment discrimination and retaliation. Plaintiff cannot state a wrongful termination claim under either theory.

To the extent the public policy invoked by Plaintiff is reporting ERISA violations (including reporting violations of ERISA-governed employee benefit plans), Plaintiff's claims are preempted by ERISA. See section B, supra, and cases cited therein.

To the extent the public policy invoked by Plaintiff is the Commonwealth's prohibition against employment discrimination and retaliation, Plaintiff's wrongful termination claims are barred by the exclusivity provision of MGL Chapter 151B. See, e.g., Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 514 (1985) (plaintiff's claim for wrongful termination on basis of age discrimination barred by exclusivity provision of Chapter 151B); Hunt v. Wyle Labs., Inc., 997 F. Supp. 84, 91 (D. Mass. 1997) (plaintiff's "attempt to circumvent . . . ch. 151B by casting his handicap discrimination claim as a common law claim for wrongful termination is precluded a matter of firmly entrenched law"); Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996) ("Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive").

## CONCLUSION

For the reasons stated herein, the Defendants respectfully request that all twelve counts in the Complaint be dismissed with prejudice.

Respectfully submitted,

HEALTHCARE SOUTH, P.C., PHYSICIAN
STRATEGIES, LLC, and JOHN BRADBURY, JR.,

By their attorneys,

_Christine Wichers_

Christine Wichers (BBO No. 631857)
Tricia A. Rice (BBO No. 633556)
Choate, Hall & Stewart
53 State Street
Boston, MA  02109
(617) 248-5000

Dated:  June 27, 2003

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR   + fax
EACH OTHER PARTY BY MAIL/HAND ON

DATE _6/27/03_ SIGNATURE _Tricia Rice_

13

3568877v2

EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss                                            SUPERIOR COURT

JOAN WALSH,                            )
                                       )
              Plaintiff,               )
                                       )
       v.                              )          Civil Action No. 03-0354B
                                       )
HEALTHCARE SOUTH, P.C., PHYSICIAN )
STRATEGIES, LLC and JOHN J.            )
BRADBURY, Jr.,                         )
                                       )
              Defendants.              )
_____)

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Plaintiff submits this Memorandum in opposition to Defendants' Mass. R. Civ. P.

12(b)(6) motion to dismiss. As set forth below, Defendants' motion should be denied

because Plaintiff has sufficiently stated claims for the Counts alleged in Plaintiff's

Complaint. In the alternative, Plaintiff hereby moves this Court for leave to amend

Plaintiff's Complaint, if necessary, pursuant to Mass. R. Civ. P. 15(a) to address any

defects.

### INTRODUCTION

This is an action arising out of Defendants' unlawful conduct in discriminating

against Plaintiff based on her gender and retaliating against Plaintiff when she brought

issues of possible unlawful practices to Defendants' attention.

**FACTS**

Plaintiff Joan Walsh was hired by Defendants Healthcare South, P.C., as its Human Resources Director, on September 25, 1999. Complaint, ¶¶ 2, 6. Plaintiff has fifteen years of retirement plan experience and possesses what was termed, by an attorney with whom she previously worked, a "superb" understanding of benefits issues. For her job performance at Defendants' company, Plaintiff frequently received praise from Defendant John J. Bradbury, Jr. (Plaintiff's supervisor), other office managers, company shareholders, and another of Plaintiff's supervisors. During her tenure at Defendants' company, Plaintiff discovered and reported internally numerous failures by Defendants to comply with federal retirement plan regulations. Id. ¶¶ 8, 9. Plaintiff did so because she did not want to see her employer suffer penalties or encounter other difficulties regarding its retirement plan, and because it was Plaintiff's job to oversee these matters.

Defendant Bradbury reacted to Plaintiff's expressions of concern by prohibiting Plaintiff from making future internal reports of compliance failures and by threatening Plaintiff's job security. Id. ¶ 10. When Plaintiff subsequently met with Defendants' office managers to discuss concerns surrounding Defendants' practices, Defendant Bradbury angrily ordered the meeting to an end, berated Plaintiff to the point where she reasonably feared for her physical safety, and again ordered Plaintiff to cease expressing concern about her employer's potential liability exposure. Id. ¶ 11.

Defendant Bradbury continued with a campaign of gender discrimination and abuse of, intimidation of, and retaliation against Plaintiff, forcing Plaintiff to approach executives of her employer to report this egregious conduct. Complaint, ¶¶ 12-13, 15. Defendant Bradbury's invasive and intimidating conduct included, but was not limited to

1) improperly accessing Plaintiff's personal e-mail account while Plaintiff was out of the office; and 2) his glaring at Plaintiff during his confrontations with Plaintiff, in an effort to frighten her, in a highly inappropriate, aggressive, and intimidating manner. Following one of Plaintiff's informational reports to her employer, Defendant Bradbury continued his humiliating attacks on Plaintiff and other female employees due to their gender. Id. ¶ 14. In addition, Defendants fostered a culture and pattern of oppressive gender discrimination by always referring to the professional, accomplished women in the office - women who served as directors, managers, and support staff - as "girls." Less than one month after Plaintiff's final internal report of discriminatory treatment, consisting of a meeting in which Dr. Morin, one of Defendants' executives, agreed that Defendant Bradbury lacked any respect for female professionals, Plaintiff was terminated. Id. ¶¶ 15-16.

Defendants' also wrongfully terminated their Billing Manager because of her age and to stop her from making internal reports of Defendants' fraudulent practices. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Complaint in Aniolowski v. Healthcare South, P.C., et. al., C.A. No. 03-0399 (2003) (pending). This employee of twenty-four years, like Plaintiff, was highly regarded by her co-workers, and her arrival at Defendants' company precipitated Defendants' reversal from financial danger to financial prosperity. Id. She was terminated at the age of fifty, and replaced by her much younger assistant who did not have the skills for the job, because Defendants believed that, once a person reaches age fifty, her "gray matter starts to go." Id. Other examples of Defendants' aggressive discriminatory animus toward this and other protected-class persons include, but are not limited to: 1) fabricating a "position" that this

3

employee lacked the skills to perform and disingenuously "offering" this invented job or an already-prepared severance package; 2) Defendant Bradbury's comment to this employee, "[y]ou are really old"; 3) Defendant Bradbury's mocking the speech pattern of an African American female who Defendant Bradbury terminated thusly: "[w]hat 'you doin', Mr. Bradbury . . . [a]re you firin' me, Mr. Bradbury? . . . [and Defendant Bradbury's response] "[y]es, I'm firin' you!" Defendants' pattern of pervasive discrimination and extreme efforts to cover up their unlawful and fraudulent practices is established.

## ARGUMENT

### I.    <u>Legal Standard</u>

In determining the sufficiency of a complaint in the face of a motion to dismiss under Mass.R.Civ.P. 12(b)(6), a court must accept as true the allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. See <u>Fairneny v. Savogran Co.</u>, 422 Mass. 469, 470 (1996). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his or her] claim which would entitle [him or her] to relief." <u>Nader v. Citron</u>, 372 Mass. 96, 98 (1997) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

Under Mass. R. Civ. P. 8(a)(1), a plaintiff, in his or her complaint, need merely make a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Mass. R. Civ. P. 8(a)(1). As the United States Supreme Court made clear in refusing to dismiss a suit, also grounded in discrimination, "[s]uch simplified notice pleading is made possible by the liberal opportunity for discovery . . . [that will] disclose

more precisely the basis of [the] claim and [will] define more narrowly the disputed facts and issues." See Conley, 355 U.S. at 42-43, 47-48 (internal quotation marks omitted). Accordingly, Plaintiff in the instant case should be permitted the opportunity to at least discover facts in support of her claim. It is premature to dismiss Plaintiff's Complaint, and Defendants will suffer no prejudice in allowing Plaintiff the opportunity for discovery so that the facts and issues will be more narrowly defined. Defendants are free, of course, should they so choose, to again raise their contentions once the facts and issues have been discovered. It is important to note that ". . . [t]he provisions of Rule 8(a) are not to be negatived by recourse to Rule 12(b) . . ." See Garcia v. Hilton Hotels Int'l, Inc., 97 F. Supp. 5, 8. (D. Puerto Rico 1951).

## II.    Counts I and II of Plaintiff's Complaint Sufficiently State Claims for Gender Discrimination.

Plaintiff has stated claims for gender-based discrimination in Counts I and II of her Complaint. To state a claim for hostile environment gender discrimination, a plaintiff must allege verbal or physical conduct that: 1) relates to gender, 2) is unwelcome, 3) has the purpose or effect of creating a hostile, humiliating or offensive work environment, and 4) interferes with the plaintiff's ability to perform his or her job. College-Town, Div. of Interco, Inc. v. Massachusetts, 400 Mass. 156, 162 (1987). One need not plead conduct that is explicitly *sexual* in nature. See Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996). Courts deem conduct sexist if it may be inferred that persons are treated in a humiliating manner based on their gender. See id. at 1377.

Plaintiff's allegations that Defendant Bradbury humiliated Plaintiff and other women by: 1) belittling persons in the office by referring to them derogatorily as "a bunch of women", and 2) saying that he would not tolerate Plaintiff (the Human

Resources *Director*) or the Billing Manager – also a woman – having a "director" title, meet the legal definition of conduct of a sexual nature. Complaint, ¶ 14. Defendant Bradbury also made sexist and racist remarks as a general matter of course, including: 1) "[a]re you having a blonde moment," to Plaintiff; 2) the cautionary, intimidating warning that "[s]exual harassment doesn't *happen* on the South Shore"; 3) other inappropriate, sexually suggestive, and irrelevant commentaries on the physical attributes of female professionals such as "[s]he's a tall, thin, brunette"; 4) the constant references to the professional women who staffed and helped build Defendants' company as "girls"; and 5) repeated references to Defendant's only Hispanic employee as "Consuelo" when her actual name was Carmen.

Plaintiff has also alleged facts sufficient to show that the conduct was unwelcome because she alleges that she brought the conduct to the attention of her employer and expressed her distress and belief that the conduct was abusive, hostile, retaliatory, and violated company policy. Id. ¶ 15. Plaintiff's allegation that Defendant Bradbury's conduct caused her to complain of its abusiveness meets the requirement that she allege that the harassment had the effect of creating a hostile environment. Finally, Plaintiff has alleged that Defendant Bradbury improperly interfered with her ability to perform her job because Plaintiff has alleged that Defendant Bradbury: 1) was motivated by animus based on gender; 2) improperly disrupted her meetings with other female employees in the office; and 3) undermined her authority by refusing to allow her to use her "director" title. Complaint, ¶¶ 11, 14.

Defendants argue that Plaintiff's claims in Counts I and II should be dismissed because the Complaint does not cite the statute that gives Plaintiff the right to recover.

Defendants ignore the body of case law that holds that a plaintiff does not need to cite, in his or her complaint, the statute that the plaintiff relies on. Ourfalian v. Aro Mfg. Co., Inc., 31 Mass. App. Ct. 294, 298 n. 5 (1991) (citing Springfield v. Commonwealth, 349 Mass. 267, 270 (1965)); Frank J. Linhares Co., Inc. v. Reliance Ins. Co., 4 Mass. App. Ct. 617, 619-20 (1976); see also supra section I (discussing requirement that complaints need merely put defendants on notice of claims). A plaintiff need only allege the facts necessary to state a claim under the statute that permits recovery. Springfield, 349 Mass. at 267, 270. Given the liberal notice pleading requirements, it is important to note that Defendants had no trouble discerning that Plaintiff was claiming under M.G.L. ch. 151B, having cited the statute at least a dozen times in their Memorandum in support of their Motion. It is also important to note that Plaintiff did cite M.G.L. ch. 151B in her MCAD filing. See MCAD Complaint Docket No. 02BEM01747, attached as Exhibit "A".

In support of their contention, Defendants cite Green v. Wyman-Gordon Co., 422 Mass. 551, 557 (1996). Defendants misread Green. Green merely stands for the proposition that a plaintiff must have first filed his or her discrimination complaint with the Massachusetts Commission Against Discrimination (MCAD) before bringing a suit in court. See id. at 554. Green addresses the procedural requirements of M.G.L. ch. 151B, which were, as is stated above, indisputably adhered to by Plaintiff in the instant case; Green does not, of course, hold that a claim is barred because a complaint does not include citation to the statute that permits recovery, as Defendants attempt to argue. Similarly, Defendants cite Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) in support of their untenable position. Charland is no more than a reiteration of Green's command that a plaintiff, as did Plaintiff in the instant case, first file with MCAD in order

to later file in court. See id. at 581. This case, like Green, does not hold that a complaint is deficient for not including a statutory citation. Defendants' argument fails. Alternatively, a simple amendment to the Complaint, if necessary, can remedy the alleged deficiency.

Defendants also argue that Plaintiff fails to state a claim for sex discrimination because Plaintiff has alleged that part of the motivation for her termination was retaliation for bringing possible unlawful practices to her employer's attention. Defendants misread Plaintiff's Complaint. Plaintiff *has* alleged adverse employment action as a result of: 1) her gender; and 2) her complaints to her employer about gender discrimination. Complaint, ¶¶ 11-16.

**III.   Counts III and IV Sufficiently State Claims for Retaliation.**

To state a claim for retaliation for a plaintiff's having opposed gender discrimination, a plaintiff must allege facts sufficient to infer that: 1) the plaintiff reasonably and in good faith believed that the defendant engaged in discriminatory conduct; 2) the plaintiff complained about the discriminatory practices; 3) the defendant took adverse action against the plaintiff, and 4) the defendant's desire to retaliate was a determinative factor in the adverse action. See MacCormack v. Boston Edison Co., 423 Mass. 652, 663 (1996).

Plaintiff has alleged her good faith belief that Defendant Bradbury engaged in discriminatory conduct by alleging that Defendant Bradbury ridiculed her and other female employees and interfered with their work. Complaint, ¶¶ 11-16. Plaintiff has sufficiently alleged that Defendant Bradbury's actions were motivated by his discriminatory beliefs relating to gender. Id. ¶¶ 14, 15. Plaintiff has also alleged that she

complained to Drs. Katz and Morin, Plaintiff's supervisors and agents of Defendants,

about the discriminatory practices, meeting the requirement that she allege such a

complaint. Id. ¶¶ 13, 15. Plaintiff has met the requirement that she allege adverse action

by alleging that Defendant Bradbury increased his discriminatory conduct against her and

that she was ultimately terminated due to her complaints. Id. ¶¶ 15, 16. Lastly, Plaintiff

has alleged facts sufficient to infer that the desire to retaliate against her was a

determinative factor in the adverse actions by alleging that she was terminated shortly

after complaining about the violations of discrimination policy. Id.

   Defendants argue that Plaintiff's claims for retaliation due to complaints about

gender discrimination must be dismissed for the same reason that Defendants argued that

Plaintiff's gender discrimination claim itself must be dismissed: the Complaint does not

cite the statute that gives Plaintiff her right to recover. Defendants again mis-cite Green,

422 Mass. 551, a case that does not support Defendants' theory under this argument or, to

reiterate, under Defendants' earlier argument. See supra section II (explaining

Defendants' argument groundless).

   A. <u>Plaintiff's Claims Are Not Preempted by ERISA Because Plaintiff's Claims</u>
     <u>Do Not Relate to ERISA for Preemption Purposes Under Massachusetts</u>
              <u>Law.</u>

Defendants argue that Plaintiff's claims are preempted by ERISA because

Plaintiff was terminated in part in retaliation for her having complained to her employer

about possible ERISA violations. Defendants ignore controlling case law that eviscerates

their argument that such complaints invoke ERISA preemption. Under Massachusetts

law, ERISA does not preempt claims such as Plaintiff's. In Pace v. Signal Tech. Corp.,

417 Mass. 154 (1994), the Supreme Judicial Court held that a claims do not relate to

ERISA, and are therefore not preempted by ERISA, "[w]hen the resolution of [the] state

law claims will neither determine whether any benefits are paid nor directly affect the administration of benefits under the plan." See Pace, 417 Mass. at 159 (quoting Cuoco v. NYNEX, Inc., 722 F. Supp. 884, 887 (D. Mass 1989)).

In Pace, an employee buy-out case, the issue was whether a state-law misrepresentation claim was preempted by ERISA because the employer's alleged misrepresentation involved the plaintiff's benefit plan. See Pace, 417 Mass. at 154-55. The court held that it was merely incidental that the claimed misrepresentation regarded benefits and that, since the misrepresentation could just as easily have been about some other aspect of the employee's buy-out package, the claim could not be said to relate to ERISA and thereby suffer preemption. See id. at 155. The subject matter of the misrepresentation was not essential to the cause of action. See id. The court noted that it would not allow employers to use ERISA as a shield from accountability for wrongful acts committed against employees. See id. at 160.

In the instant case, similar to Pace, the subject matter of Plaintiff's inquiries regarding possible unlawful employment practices could just as easily have been practices other than those regarding ERISA. The subject matter of Defendants' possible unlawful employment practices, like the subject matter of the defendant's misrepresentation in Pace, is not essential to Plaintiff's action. There is no need in either case to make a determination of whether benefits are paid, nor do the claims in either case directly affect the administration of benefits, as Massachusetts law requires for preemption. Under the law of this jurisdiction, Defendants cannot be permitted to attempt to use ERISA as a shield against accountability for their acts of retaliation against Plaintiff.

    B.    <u>Defendant Bradbury is Liable For His Acts of Retaliation Against</u>
        <u>Plaintiff Because the Totality of the Circumstances in the Complaint Prove</u>
        <u>Defendant Bradbury's Knowledge of and Reaction to Plaintiff's Internal</u>
        <u>Reports of Discrimination.</u>

Defendants argue that Defendant Bradbury is exempt from liability for his retaliation against Plaintiff because Plaintiff's Complaint does not directly state that Defendant Bradbury knew of Plaintiff's complaints to Dr. Morin. The Supreme Judicial Court has emphasized that the presence of retaliation is largely a factual matter. <u>Bain v. Springfield</u>, 424 Mass. 758, 764 (1997). In <u>Bain</u>, the Court considered whether to direct a verdict for the defendant on a retaliation claim and stated that it could not direct a verdict if "*any* evidence *anywhere* in the record supports [the verdict]." <u>Id.</u> (citing <u>MacCormack v. Boston Edison Co.</u>, 423 Mass. 652, 659 (1996)) (emphasis supplied). The allegations in a complaint need only be sufficient for an *inference* that the defendant knew of the plaintiff's reports about discrimination and retaliated because of said reports. See <u>Lewis v. Gillette Co.</u>, 22 F.3d 22, 24 (1994).

The totality of the circumstances alleged in Plaintiff's Complaint permit the inference that Defendant Bradbury knew of Plaintiff's complaints. Plaintiff alleges that, only one day after her complaint to one of her supervisors, Treasurer and Board Member Dr. Katz, about incidents of gender-based hostile behavior by Defendant Bradbury, Defendant Bradbury demanded a meeting with Plaintiff and· 1) warned her to stop using her director's title, 2) derogatorily referred to the female office workers as "a bunch of women", and 3) stated that he would not tolerate the Plaintiff and the Billing Manager, also female, carrying the title of "director." Complaint, ¶¶ 13, 14. In addition, Plaintiff alleges that, during Plaintiff's meeting with Dr. Morin, Dr. Morin disclosed to her that

Defendant Bradbury had expressed concerns that Plaintiff would turn the company in to the EEOC. Id. ¶ 15.

These allegations permit the inference that Defendant Bradbury was informed of Plaintiff's complaints to Dr. Katz because Defendant Bradbury angrily reacted to those complaints by verbally attacking Plaintiff the day after those complaints were made. These allegations also permit the inference that Dr. Morin and Defendant Bradbury were engaging in ongoing communications about Plaintiff's complaints because Dr. Morin admitted that Defendant Bradbury had expressed his worry that Plaintiff would vindicate her legal rights by taking her complaints outside of the office. Moreover, Dr. Morin was obligated to investigate these complaints immediately. Plaintiff has alleged facts sufficient to infer that Defendant Bradbury not only knew of, but aggressively responded to, Plaintiff's complaints to her employer regarding Defendant Bradbury's discriminatory activity.

## IV. Counts V and VI Sufficiently State Claims for Intentional Interference With an Advantageous Business Relationship and Intentional Interference With a Contractual Relationship.

To assert a claim for intentional interference with a contract, a plaintiff must allege facts sufficient to infer that: 1) he or she had a contract with a third party; 2) the defendant knowingly induced the third party to breach the contract; 3) the interference was improper in motive or means; and 4) the plaintiff was harmed by the interference. Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). To sustain a claim of interference with an advantageous business relationship, a plaintiff must allege facts sufficient to infer that: 1) there existed a business relationship or contemplated contract of economic benefit, 2) the defendant had knowledge of the relationship, 3) there was

intentional and improper interference on the defendant's part; and 4) plaintiff's loss of advantage resulted directly from the defendant's conduct. Yovino v. Fish, 27 Mass. App. Ct. 442, 445 (1989).

Plaintiff has alleged sufficient facts for her claim of intentional interference with a contractual relationship. Plaintiff has alleged that she suffered harm when Defendant Bradbury induced her employer to terminate her. Specifically, Plaintiff alleges that Defendant Bradbury misled Plaintiff's employer into the belief that she intended to report her employer for employment violations. Complaint, ¶ 15. Plaintiff has also alleged improper motivation because the retaliatory motives that she has alleged are sufficient to constitute improper or malicious purpose. See Petsch-Schmid v. Boston Edison Co., 914 F. Supp. 697, 706 (D. Mass. 1996).

Similarly, Plaintiff has alleged facts sufficient to support her claim for intentional interference with an advantageous business relationship. Plaintiff sufficiently alleges that Defendant Bradbury improperly interfered with Plaintiff's relationship with her employer by deceiving Plaintiff's employer into believing that Plaintiff intended to report her employer for employment violations. Complaint, ¶ 15. Plaintiff has also alleged facts sufficient to support the inference that Defendant Bradbury's actions led directly to her termination just one month after Plaintiff's meeting with Dr. Morin in which Defendant Bradbury's deception was discussed. Id. ¶¶ 15, 16.

Defendants argue that Plaintiff's intentional interference claims are barred because Plaintiff also claims sex discrimination in the instant suit. Defendants again mis-cite Green, 422 Mass. 551 and Charland, 417 Mass. 580, these cases do not address intentional interference claims and, to reiterate, are cases in which the claims failed

because of procedural, not substantive, deficiencies. Supra section II (explaining actual holdings of cases cited by Defendants). Defendants also cite Dorn v. Astra USA, 975 F. Supp. 388 (D. Mass. 1997) for the proposition that intentional interference claims are barred in cases in which sex discrimination is alleged. Dorn does not support Defendants' assertion; the claims in that case were dismissed not because they were grounded in sex discrimination, but because, like the other cases cited by Defendants, the plaintiff failed to follow procedural requirements. See id. at 395-96. These cases are irrelevant because, as stated above, Plaintiff in the instant case followed Chapter 151B's procedural requirements. Supra section II.

## V.  Counts IX and XII Sufficiently State Claims for Wrongful Termination in Violation of Public Policy.

Plaintiff has met her burden to allege facts sufficient for a claim of wrongful termination in violation of public policy. An employee who is terminated after reporting unlawful conduct to management may bring a claim for termination in violation of public policy. See Shea, 425 Mass. at 762. A plaintiff need not have complained outside the organization. See id. at 763. Plaintiff has sufficiently stated her claim because she has alleged that she was wrongfully terminated in violation of public policy after repeatedly reporting her concerns about possible unlawful employment practices. Complaint, ¶¶ 8-11, 13, 15-16.

Defendants argue that Plaintiff's claim is preempted by ERISA because Plaintiff was terminated in part because she brought possible ERISA violations to her employer's attention. As set forth above, ERISA does not preempt Plaintiff's claim because, in this Commonwealth, Plaintiff's claim does not relate to ERISA for preemption purposes. See supra section III A (explaining Massachusetts's ERISA-preemption jurisprudence).

Defendants also rehash their earlier erroneous argument that M.G.L. ch. 151B bars Plaintiff's claim. Defendants cite three cases, none of which support their theory. The cases Defendants cite - <u>Melley v. Gillette Corp.</u>, 19 Mass. App. Ct. 511 (1985), <u>Hunt v. Wyle Labs, Inc.</u>, 997 F. Supp. 84 (D. Mass. 1997), and, once again, <u>Green</u>, 422 Mass. 551 (1996) - bar claims because of failure to comply with ch. 151B's procedural filing requirements (again, not an issue in the instant case), not because of the substance of claims, as Defendants attempt to assert.

## VI. Count XI Sufficiently States a Claim For Intentional Infliction Emotional Distress.

To assert a claim for intentional infliction of emotional distress, a plaintiff must allege: 1) extreme and outrageous conduct; 2) that the defendant knew or should have known that emotional distress was likely to occur; 3) that the distress was of a nature that a reasonable person could not be expected to endure it; and 4) that the defendant's actions resulted directly in the plaintiff's distress. <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144-45 (1976). Plaintiff in the instant case has alleged facts sufficient to make out a claim for intentional infliction of emotional distress.

Plaintiff has sufficiently alleged a constant barrage of extreme and outrageous conduct on Defendant Bradbury's part by alleging, for example: 1) Defendant Bradbury's irrational, extremely aggressive prohibitions on Plaintiff's efforts to bring legal violations to her employer's attention as part of her regular duties; 2) angrily stopping Plaintiff's meetings with staff, which meetings were part of Plaintiff's regular course of work, including by berating Plaintiff to the point where she feared for her physical safety; 3) carrying out an oppressive, outrageous campaign of gender discrimination that included, among other things, angry, attacking characterizations of female professionals as a mere

"bunch of *women*" and a refusal to even permit female *directors* to use their "director" title because of his desire to subordinate women in general. Complaint, ¶¶ 10-14. Plaintiff was forced to go to executives of her employer to seek refuge from Defendant Bradbury's irrational and frightening expressions of hostility toward her and other female employees. Id. ¶ 15.

Plaintiff's allegations also support the inference that Defendant Bradbury not only should have known that his conduct would cause emotional distress, but that he knew that his conduct in fact caused such distress. As stated above, the totality of the circumstance support the inference that Defendant Bradbury knew that Plaintiff was under so much distress that she was compelled to seek shelter by reporting the abuse to Defendants. Supra section III B. In addition, the incessant and pervasive nature of Defendant Bradbury's discriminatory animus and conduct toward, not only Plaintiff, but toward individuals in virtually every protected-class category known to the law, leads to the inescapable inference that any reasonable person would be expected to suffer significant emotional distress when under direct attack, as was Plaintiff, by Defendant Bradbury. Finally, Plaintiff has suffered significant physical symptoms of distress to accompany the damaging emotional distress that she has been forced to attempt to endure. Plaintiff suffered from: 1) an inability to sleep as a result of Defendant Bradbury's behavior; 2) an inability to eat because of Defendant Bradbury's behavior, barely getting along by sipping warm Coca-Cola and warm ginger ale, 3) vomiting when she ventured to eat; and 4) constant nausea.

Defendants attempt to assert that Defendant Bradbury is protected from accountability for his actions by the umbrella of the workers' compensation act.

16

Defendants ignore the body of case law that refuses to permit supervisors who behave as Defendant Bradbury has to escape the consequences of their actions. A supervisor is not exempt from accountability by the workers' compensation act if his or her conduct is not in furtherance of his or her employer's interest. Brown v. Nutter, McLennen & Fish, 45 Mass. App. Ct. 212, 216 (1998). Acts may be done in the course of employment, but not in furtherance of one's employer's interests, and such claims arising under such acts are not preempted by the workers' compensation act's remedial scheme. Id. at 216-17 (citing O'Connell v. Chasdi, 400 Mass. 686, 690 n.5 (1987)). "The Supreme Judicial Court was clear that it did not think that the right to commit such acts with impunity was part of the general compromise of rights involved in the [workers' compensation] act." Id. at 217 (internal quotation marks omitted). Sexually discriminatory acts committed by a supervisor are not protected by the workers' compensation act. See Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1049-50 (D. Mass. 1995).

In Brown, the court held that it was improper to hold, as a matter of law, that a supervisor, who told his secretary to forge documents for her supervisor's personal benefit, was acting in his employer's interest. Id. at 218. The court emphasized that it was not in the supervisor's employer's interest to have the supervisor order forgery. Id. In the same way that it was improper to dismiss the plaintiff's complaint in Brown, it is improper to dismiss Plaintiff's complaint because in both cases the supervisors were engaging in activity that was unrelated to their employer's interest. In the instant case, Defendant Bradbury's pervasive gender discrimination, like the Brown supervisor's forgery instructions, represents unlawful activity that has nothing to do with the furtherance of either employer's interest. Just as forgery can land an employer in

significant legal trouble, and is therefore never in the employer's interest, so can gender discrimination, which is also, of course, never in any employer's interest.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants' motion.

Dated: August 8th, 2003

The Plaintiff
By Her Attorneys,

Edward M. Swartz, BBO# 489540
David P. Angueira, BBO# 019610
SWARTZ & SWARTZ
10 Marshall Street
Boston, Massachusetts  02108
(617) 742-1900

## CERTIFICATE OF SERVICE

I, David P. Angueira, Esquire, do hereby certify that I have served a copy of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Complaint upon the Defendants by mailing same, first class mail, postage prepaid, to all counsel of record, to wit:

Christine Wichers, Esq.
Tricia A. Rice, Esq.
Choate, Hall & Stewart
53 State Street
Boston, MA 02109

David P. Angueira
BBO No. 019610

on this _11_ day of August, 2003.

EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 2003-0354

JOAN WALSH

vs.

HEALTHCARE SOUTH, P.C. and others[1]

### ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

The plaintiff, Joan Walsh, brought this action against the defendants, Healthcare South, P.C., Physician Strategies and John Bradbury, Jr. (Bradbury). The complaint includes claims against each defendant for gender discrimination, retaliation, negligent infliction of emotional distress, intentional infliction of emotional distress, and wrongful termination. The complaint also includes claims against Bradbury for intentional interference with an advantageous business relationship and intentional interference with a contractual relationship. This matter is before the court on the defendants' motion to dismiss all counts of the complaint for failure to state a claim pursuant to Mass. R. Civ. P. 12(b)(6). The plaintiff, in addition to opposing the defendants' motion to dismiss on substantive grounds, moves the court for leave to amend the complaint pursuant to Mass. R. Civ. P. 15(a) to address any defects in the complaint.

The defendants' motion to dismiss is **ALLOWED** as to Count VII (Negligent Infliction of Emotional Distress Against Defendants Healthcare South, P.C. and Physician Strategies, LLC) and Count VIII (Intentional Infliction of Emotional Distress Against Defendants Healthcare South, P.C. and Physician Strategies, LLC). Even assuming the court were to allow the plaintiff to amend her complaint with respect to these claims, the plaintiff could plead no set of facts

---

[1]Physician Strategies, LLC and John J. Bradbury, Jr.

entitling her to relief.  The Worker's Compensation Act, G.L. c. 152, provides the exclusive

remedy for personal injuries arising out of the course of employment, and includes intentional

and negligent infliction of emotional distress claims.  See <u>Doe</u> v. <u>Purity Supreme, Inc.</u>, 422 Mass.

563 (1996).[2]

The defendants' motion to dismiss is further **<u>ALLOWED</u>** as to Counts IX (Wrongful

Discharge In Violation of Public Policy Against Defendant Healthcare South, P.C. and/or

Physician Strategies, LLC) and XII (Wrongful Discharge In Violation of Public Policy Against

Defendant John J. Bradbury, Jr.) of the complaint.  Insofar as the plaintiff's wrongful termination

claim is based on the defendants' alleged gender discrimination, her claim is barred by the

exclusivity provision of G.L. c. 151B.  See <u>Green</u> v. <u>Wyman-Gordon Co.</u>, 422 Mass. 551, 558

(1996).  Insofar as the plaintiff alleges she was wrongfully terminated because she reported

possible benefit plan violations, such a claim would be preempted by the Employee Retirement

Income Security Act.  See <u>Fairneny</u> v. <u>Savogran Co.</u>, 422 Mass. 469 (1996).  See also 29 U.S.C.

§ 1002(14)(A) (including within the definition of fiduciary, "any administrator, officer, trustee,

or custodian.").

The court makes no ruling as to the remaining counts of the complaint.  The court

**<u>ALLOWS</u>** the plaintiff's motion to amend her complaint pursuant to Mass. R. Civ. P. 15(a),

---

[2]To note, the motion to dismiss is not allowed as to Count X (Negligent Infliction of
Emotional Distress Against Defendant John J. Bradbury, Jr.) because the plaintiff, by amending
her complaint, may plead facts showing that defendant Bradbury was not acting in the course of
his employment during his alleged negligent acts.  See <u>Saharceski</u> v. <u>Marcure</u>, 373 Mass. 304,
306 (1997).  Moreover, the motion to dismiss is not allowed as to Count XI (Intentional Infliction
of Emotional Distress Against Defendant John J. Bradbury, Jr.) because the plaintiff, by
amending her complaint, may plead facts showing that defendant Bradbury was not acting in the
course of his employment and in the furtherance of the employer's interests during his alleged
intentional acts.  See <u>Faruso</u> v. <u>Blakely,</u> 40 Mass. App. Ct. 120, 123 (1996).

thereby allowing the plaintiff to plead those facts necessary to cure the alleged defects raised by the defendants' memorandum in support of its motion to dismiss.

Gary A. Nickerson
Justice of the Superior Court

DATED: April 26 , 2004

3

**Commonwealth of Massachusetts**
**County of Plymouth**
**The Superior Court**

CIVIL DOCKET#: **PLCV2003-00354-B**

RE:    Walsh v Healthcare South P.C. et al

TO:    Christine J Wichers, Esquire
       Choate Hall & Stewart
       53 State Street
       Exchange Place
       Boston, MA 02109

---

### NOTICE OF DOCKET ENTRY

You are hereby notified that on **04/26/2004** the following entry was made on the above referenced docket:

   **ORDER on Defendants' motion to dismiss for failure to state a claim and plaintiff's motion to amend the complaint (Gary A. Nickerson, Justice)**

Dated at Plymouth, Massachusetts this 26th day of April, 2004.

Francis R. Powers,
Clerk of the Courts

BY: Adam Baler
Assistant Clerk

Telephone: (508) 747-6911